No. 16,102.

MILLER-DUPONT, INC. *v.* SERVICE.
(208 P. [2d] 87)

Decided May 31, 1949.   Rehearing denied June 27, 1949.

Messrs. JANUARY & YEGGE, MARGARET R. BATES, for plaintiff in error.

Mr. DAVID F. HOW, Mr. EDGAR McCOMB, Mr. GODFREY

Nordmark, Mr. Albert E. Zarlengo, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Margaret J. Service brought an action against Miller-Dupont, Inc. to recover damages for personal injuries sustained by her in a fall on a stairway in a building owned by it and in which she was a tenant. Trial was had to a jury, which returned its verdict in favor of plaintiff in the sum of $3339.22, upon which judgment was entered. Defendant seeks a reversal of the judgment by writ of error.

We will herein refer to the parties as plaintiff and defendant as they appeared in the trial court.

In the amended complaint it is alleged: That defendant, a corporation, was the owner of an office building in Denver in which plaintiff as a tenant occupied a portion of the foyer therein, where she conducted a cigar stand and lunch counter. On the fourth and fifth floors of said building were rest rooms provided by defendant for the use and accommodation of plaintiff and others. It is further alleged that on the morning of May 22, 1946, plaintiff ascended the stairs in said building from the first to the fourth floor for the purpose of using the rest room thereon, and while descending therefrom to the ground floor, she fell at a landing midway between the second and first floors. This landing, it is alleged, "by the willful negligence of the defendant, was unmarked, unguarded and unlighted even though the necessity for artificial light existed and was well known to the defendant." It is further alleged, "That the cause of Plaintiff's injurious fall was lack of natural or artificial light sufficient to enable her to see said landing."

It was further alleged that on May 22, 1946, section

3306, of Ordinance No. 32, Series of 1935, of the Building Code of the City and County of Denver, was in full force and effect. It was therein provided that: Every stairway or other means of exit into corridors and passageways appurtenant thereto shall be provided with an adequate system of lighting. Lights in the exit signs shall be kept burning at all times that the Building served by such stairways or exits is being used or occupied." Likewise was pled Rule 18, promulgated by the Industrial Commission of Colorado in 1942, which was, on May 22, 1946, in full force and effect, and wherein it is provided: "Stairs, stair landings and stair approaches shall be kept lighted during all times when frequent use of stairs may reasonably be expected. The lighting shall be so arranged as to be free from shadows and of such intensity that the stairs may be clearly and distinctly visible."

It is alleged that the defendant had violated both the requirements of the section of said ordinance and the provisions of said Industrial Commission rule.

Plaintiff further alleged that in consequence of said negligence of defendant, and as a direct and proximate result of said fall, she had suffered fractures of three bones in her left ankle, general body bruises and shock; permanent partial use of her left leg; been compelled to abandon her means of livelihood; and that she had incurred medical, hospital, ambulance and nursing bills in the sum of $243.00. She prayed "judgment against defendant in the sum of $5,243.00" and costs.

Defendant, in its amended answer to the amended complaint, admits the allegations of the amended complaint, excepting it denies all alleged negligence on its part, and denies that section 3306 of said Ordinance 32, Series of 1935, of the Building Code of the City of Denver and the rule promulgated by the Industrial Commission of Colorado during the year 1942 were in force and effect as to it. It avers that it is without information upon which to base a belief as to the nature and

extent of any injuries or expense alleged to have been incurred by the plaintiff as a result of her accident, and therefore denies the same.

Further answering the allegations of the amended complaint, defendant, for a first affirmative defense, alleged that plaintiff's injuries and damages were proximately caused by her own sole negligence; for a second affirmative defense that plaintiff's injuries and damages were proximately caused by her contributory negligence; for a third affirmative defense that plaintiff's injuries and damages were proximately caused by her assumption of risk; for a fourth affirmative defense that plaintiff's injuries were proximately caused by an unavoidable accident; and for a fifth affirmative defense that plaintiff is precluded from maintaining this action because of a provision in a certain lease then in force and effect between plaintiff and defendant.

The undisputed evidence discloses that plaintiff was the lessee of a cigar and lunch counter in the foyer of defendant's building; that at the time of her injuries there existed a national coal shortage which occasioned a curtailment in the elevator and lighting service theretofore furnished by defendant; that plaintiff customarily went to the rest room on the fourth floor of defendant's building at about 7 o'clock in the morning, and previous to the coal shortage used the elevator for the purpose of going thereto and returning therefrom; that due to the coal shortage, the elevators were not operated at 7 o'clock as formerly; and that a notice, containing the following, was offered and admitted in evidence: "At present the lights and elevators of the Cooper Bldg. are wholly dependent on this coal. Since it seems better to continue on a single shift in the hopes of procuring relief, or a substitute before all supply is exhausted (rather than to run out the end of the week on a double shift), it becomes necessary to put the building strictly on a NINE (9) to FIVE (5) P.M. basis for lights and

elevators effective tomorrow, May 9th, and No Sunday Service."

Some witnesses testified that a similar notice was posted prior to the accident; some testified to a recollection that the hours were not the same as those set out in the exhibit; one testified that the words, "and lights," were added after the occurrence of the accident. Prior to the morning in question, and for an indefinite number of days, it had been plaintiff's practice, as we have said, to ascend and descend the stairs to the rest room on the fourth floor at approximately 7 o'clock A.M., during which time the light at the landing was not burning.

With reference to the accident and what occasioned it, the plaintiff testified: "A. Well, I had gotten down to this landing between the first and second floors, and I was coming down another stretch of stairs, and this landing was so dark that I *thought* I was on the last step, and intended to step off on the landing. Instead of that I was on the second step, a step over the last step, and landed on the landing and broke my ankle."

\* \* \*

"Q. You have indicated the position of one light over the stairs and about the position of the landing; was that light on? A. That was the one that was off. Q. Was the light in place—was there a bulb in the socket? A. There was a bulb in the socket as I remember. Q. But the bulb was not turned on? A. *No, it hadn't been for quite some time.*" (Italics ours)

On cross-examination she testified: "Q. Mrs. Service, going back to your accident again; you have mentioned the light was out, there was a bulb in there but the light was out; how long had it been out? A. I can't be definite on that, it had been out for some time. Before these repairs began, I could say that definitely."

\* \* \*

"Q. How long had the elevators been shut down? A. Well I am not definite about that, as I said before it was just a very short time before this that Mr. Miller put up

the sign, and there had been so much disruption of service in every way that I cannot be sure about that."

\* \* \*

"Q. Now had you gone up every morning, up to this place? A. No, just since the elevators were off. Q. I mean after they turned off the elevators, had you gone up there, hiked those stairs every morning? A. Well, I had gone a few mornings, I can't remember just how many mornings, but it was not—it hadn't been my practice to go up there very long, because I always had the elevators. Q. Well, can you give the jury some estimate how many mornings that you had hiked the stairs? A. Well, I don't think more than *two or three*. Q. And on *those occasions* was this light out? A. *Yes*. Q. *Had you had any difficulty in getting up and down the stairs on those other occasions?* A. *No*, not like I did this morning."

\* \* \*

"Q. I want to ask you, *were there any handrails along the side of these steps as you come down them? A. Yes, there was a handrail on each side.* Q. Which side did you come down? A. I came down on the one nearest the elevator. Q. That would be your left side? A. Yes, I had *hold with my left hand.* Q. Did that handrail extend out on the landing past the steps? A. I don't remember; *I let loose of it as I stepped down,* naturally, *I thought I was on the—going on the landing, so I let loose of it.* Q. *But you had had hold of the railing up to the time that you stepped—* A. *Yes."*

\* \* \*

"Q. Now I believe you testified that you had hold of the handrail up to the time that you—just before you fell? A. Yes, I thought I was stepping off, so I let loose of it. Q. As we gather your testimony, Mrs. Service, the *reason for your fall* aside from the fact that there was no light, and then if I understand it, *is the fact that you made a mistake thinking you were on the landing when as a matter of fact you were on the second step up from*

*the landing; is that correct? A. That is right. Q. That
is, a mistake on your part what step you were on?
A. That is right. Q. And you also let go the handrail
under the mistaken belief that you were on the second
step up? A. Yes. Q. You have no complaint about the
steps at all, the condition of the steps? A. No, I
wouldn't say that it was the fault of the steps. Q. Did
you consider that stairway as being dangerous on your
previous trip up there? A. Yes, everybody was talking
about it being a dangerous stairway because there wasn't
a light on it."*

\* \* \*

"Q. Did you consider it [the stairway and landing] a
dangerous condition when you went up that morning?
A. Well, yes. \* \* \* Q. You then realized it was a
dangerous condition there; did you ever go to Mr. Miller
and complain about that light? A. No, we were not in
the habit of going to Mr. Miller; we went to Mr.
Haynes." (Italics ours)

In the complaint filed by plaintiff's counsel, it was
alleged that the only act of negligence on defendant's
part was its failure to provide a light at the landing on
the stairway, and during the cross-examination of plain-
tiff this position was emphasized by the statement of
Mr. Zarlengo: "There is no contention that there was no
handrail, or anything wrong with the stairway; the only
contention is that there was no light."

Plaintiff called as a witness a Mrs. Fay, who was
employed in an office in the Cooper Building and who
was familiar with the stairway, the landing, and the
lighting thereon at the time of the accident, and from
this witness it was learned that the light on the land-
ing had been out for a considerable period of time. With
reference to the lighting and the condition of the land-
ing, the witness testified: "Q. Do you know whether or
not the light on this stairway had been out for any
period of time during the month of May? A. Yes it was.
\* \* \* Q. Can you describe to the court and the jury

just about how dark it was? A. Well, it was dark enough that I was always afraid I would fall; it was not so dark you couldn't see, but when you are going downstairs or up if you can't see the stairs below you, it always makes one a little bit afraid, and I was always afraid."

On cross-examination Mrs. Fay testified further as follows: "Q. Now you stated there was no light at all yet it was not entirely dark; just what do you mean by that? A. Well, it was not dark like night."

A police officer who was called to the scene of the accident testified in substance, as did other witnesses, with reference to the conditions on the landing.

Plaintiff, with the assistance of her husband, had been earning from $200 to $250 per month; she was fifty-nine years of age; had a life expectancy of 14.74 years, and, according to expert testimony, had a permanent disability of fifteen per cent.

Plaintiff offered in evidence section 3306 of Ordinance No. 30, supra; also Rule 18, supra, promulgated by the Industrial Commission of Colorado in 1942, to which offer an objection was interposed and sustained.

During the cross-examination of plaintiff, defendant had identified and offered in evidence the lease under which plaintiff was operating the cigar and lunch counter and called particular attention to the following provision therein: "The said Tenant does covenant and agree as follows, to-wit: * * * to neither hold nor attempt to hold the Landlord liable for any injury or damage either proximate or remote occurring through or caused by any repairs, alterations, injury or accident to above demised premises, to adjacent premises or other parts of the above premises not herein demised, or by reason of the negligence or default of the owners or occupants thereof or any other person."

While there is evidence that the light on the landing where the injuries were incurred had been out for several days prior to the time of the accident, there is

no evidence that this condition had been called to the attention of the owner of the building or its agents.

At the conclusion of the plaintiff's case, the defendant, having rested without offering any testimony, moved for a nonsuit and for dismissal of the plaintiff's action, and for a directed verdict in favor of the defendant on the following grounds: 1. That by the terms of the lease plaintiff agreed not to hold the defendant liable for any claim for injury or damages founded upon negligence; 2. There was no legal duty upon the defendant to provide lighting for the stairway on which plaintiff's injuries allegedly occurred, and no showing of negligence on defendant's part; 3. That plaintiff's evidence established that she was guilty of contributory negligence as a matter of law or that her injuries occurred by reason of mistake on her part.

The court denied defendant's motion, stating: "The Court: I feel that there is something yet to decide, and unless I felt that there is something to decide the case would not go to the jury. But there is a question here of contributory negligence, and the jury may or may not infer from the testimony that the plaintiff was guilty of contributory negligence. It is not my province to preclude that on a matter being tried to the jury. I think it would be wrong to take that question away from them. I think it is a very close question. I feel that the question should be determined by the jury. I overrule the motion."

The points specified are substantially the same as the grounds urged in support of the motion for nonsuit, dismissal and directed verdict, with an additional specification directed to the giving and refusing to give certain instructions, which additional specification we do not deem it necessary to discuss. The specifications will be considered in the order set forth in defendant's motion for dismissal, nonsuit and directed verdict.

There are no cross specifications of points.

1. Counsel for defendant contend that the above-

quoted provision of the lease between plaintiff and defendant is a covenant not to sue, and so precludes plaintiff from maintaining this action. In support of this contention our attention is directed to 52 C.J.S., pp. 53 and 54, and the decision in *Inglis v. Garland,* 19 Cal. App. (2d) 767, 64 P. (2d) 501. We may assume that a contract between a landlord and tenant, wherein the tenant covenants not to sue for personal injuries, is valid and enforcible, but as we construe the provision in the lease here in question we confine it to damages to personal property and hold that it does not apply to damages resulting from personal injuries. Certainly the lease construed in *Inglis v. Garland, supra,* contains a provision so radically different from the one in the lease here under consideration as to make that case wholly inapplicable to the present case. Assuming the validity and enforcibility of a covenant not to sue the landlord for personal injuries sustained by tenant in connection with the leased premises, our construction of the provision here in question is such as to make it wholly inapplicable.

2. It should be remembered that plaintiff testified positively that she had ascended and descended the stairways several times prior to her accident. The notice would indicate that it was posted on May 9, which undoubtedly referred to May 9, 1946. Plaintiff had, on previous occasions, observed the landing unlighted and testified that on her previous trips she considered the stairway as dangerous. She further testified that there was a handrail on both sides of the stairway and that she, in descending, had hold of the handrail at her left with her left hand. She also testified that she found no fault whatever with the condition of the stairway and that on the morning of her accident, as she ascended the stairway, she considered it to be dangerous; further, that at the instant of her fall she released her hold on the handrail. She further testified that she made a mistake in thinking that she was on the landing when, as a

matter of fact, she was on the second step above it, and this was the reason for her fall with resulting injuries. It also should be remembered that plaintiff in her complaint definitely alleges, "That the cause of Plaintiff's injurious fall was lack of natural or artificial light sufficient to enable her to see said landing." And it also should be remembered that plaintiff's counsel, Mr. Zarlengo, stated in open court: "There is no contention that there was no handrail or anything wrong with the stairway; the only contention is that there was no light."

The sole and only question presented for our determination is whether it was the duty of defendant, as a matter of law, to keep the landing and the stairway leading thereto and therefrom lighted. If, as a matter of law, the landlord was legally obliged to furnish such lighting, and by reason of his failure to do so plaintiff suffered damages, and she herself was not guilty of negligence proximately contributing to the accident, the judgment must be affirmed; otherwise reversed.

It is a generally recognized rule at common law that a landlord does not owe any obligation or duty to provide stairways and hallways used in common by tenants with artificial lights unless there is some unusual and dangerous condition existing which necessitates special warning to his tenants. Also there is a rule, recognized in many jurisdictions, that in the absence of statutory requirements or agreements the landlord is under no obligation or duty to light stairways or halls for the benefit of his tenants or persons using the same by virtue of the tenant's rights, unless a dangerous condition exists therein by reason of faulty construction or unless there are hidden dangers therein known to the landlord and unknown to his tenants. *Weller v. Consolidated Gas Co.*, 198 N.Y. 98, 91 N.E. 286; *Brugher v. Buchtenkirch,* 167 N.Y. 153, 60 N.E. 420; *Capen v. Hall,* 21 R.I. 364, 43 Atl. 847; *Rhodes v. Fuller Land & Improvement Co.*, 92 N.J. Law 569 (7 Gummere), 106 Atl. 400; *McCabe v. Mackay,* 253 N.Y. 440, 171 N.E. 699;

*Busby v. Silverman,* 82 Cal. App. (2d) 393, 186 P. (2d) 442; *Reinagel v. Walnuts Residence Co.,* 239 Mo. App. 701, 194 S.W. (2d) 229; *Norman v. Shulman,* 150 Fla. 142, 7 So. (2d) 98; *O'Neil v. Noe,* 301 Ky. 472, 192 S.W. (2d) 366; 32 Am. Jur., p. 576, §701; 52 C.J.S., p. 33, §417 (b), (h) (2), p. 56; 25 A.L.R., p. 1312; 39 A.L.R., p. 302; 58 A.L.R., p. 1419; 75 A.L.R., p. 166; 97 A.L.R., p. 232; 2 Underhill on Landlord and Tenant, p. 810, §492; 2 McAdam on Landlord and Tenant (5th ed.), p. 1304; *Jones* on Landlord and Tenant, p. 712, §619; Tiffany, Landlord and Tenant, p. 635, §89 (e).

The court instructed the jury, "14. You are instructed that under the circumstances of this case there was no duty in law on the part of the defendant to have a light burning for the benefit of the plaintiff on, above, or adjacent to the stairway on which the plaintiff fell." It is difficult for us to understand why the court, overruling plaintiff's objection to this instruction, specifically contending that "since there was no duty in law on the part of the defendant to have a light burning for the benefit of plaintiff," nevertheless denied defendant's motion for dismissal, nonsuit and directed verdict.

Under our conception of the law, there was no duty requiring defendant to light the stairway and landing in the absence of some peculiarly dangerous physical condition in connection therewith, and none such is here shown; consequently, there was no actionable negligence for which plaintiff might recover damages for injuries sustained thereon.

3. It has been strenuously urged by counsel for defendant here, as it was in the trial court, that plaintiff's evidence clearly disclosed that she was guilty of contributory negligence or that her negligence was such as proximately contributed to her injuries; if so, she concededly could not maintain this action. This contention was one of the grounds for its motion for nonsuit, dismissal and a directed verdict presented at the conclusion of the plaintiff's case in chief, as well as at the

conclusion of all of the evidence, and was, as we have said, denied.

We deem it unnecessary to restate plaintiff's evidence which defendant contends conclusively established that the plaintiff's negligence barred her recovery, and, therefore, it became the duty of the court, as a matter of law, to so determine. It does become the duty of the court to determine, as a matter of law, whether a litigant is guilty of contributory negligence barring a recovery where all the evidence and the legitimate inferences to be drawn therefrom are not in dispute, and where the precise measure of plaintiff's duty is determinate and a rule of duty in a given situation is clearly defined. The evidence here presented this precise situation as we view it. While we have been unable to find any decision of our court directly involving a factual situation identical to that here existing, nevertheless the following decisions from our court, as well as those from other jurisdictions, are sufficiently in point to persuade us that defendant's contention is correct, that its motion should have been sustained, and that error was committed by the trial court in its denial. *Colorado Central R.R. Co. v. Holmes,* 5 Colo. 197; *Town of Lyons v. Watt,* 43 Colo. 238, 95 Pac. 949; *Norman v. Shulman, supra; Lang v. Henderson* (Tex. Cir. App.), 211 S.W. (2d) 972; *Lepley v. Von Dorn,* 139 Nebr. 410, 297 N.W. 642; *Rice v. Goodspeed Real Estate Co.,* 254 Mich. 49, 235 N.W. 814; *Wesbrook v. Colby, Inc.,* 315 Ill. App. 494, 43 N.E. (2d) 405; *Seelbach, Inc. v. Mellman,* 293 Ky. 790, 170 S.W. (2d) 18; *Fergeson v. National Bank of Commerce* (Tex. Cir. App.), 174 S.W. (2d) 1015; *Lake v. Emigh,* 118 Mont. 325, 167 P. (2d) 575; *Chapman v. Title Ins. & Tr. Co.,* 68 Cal. App. (2d) 745, 158 P. (2d) 42; *Viles v. Thunborg,* 164 Wash. 190, 2 P. (2d) 666; *Colburn v. Shuravlev,* 24 Cal. App. (2d) 298, 74 P. (2d) 1060; *Cannon v. Blatt,* 342 Pa. 303, 20 A. (2d) 293; Beach on Contributory Negligence (3d ed.), p. 54, §37;

1 Shearman and Redfield on Negligence (Rev. ed.), p. 320, §131.

Under the facts disclosed by the evidence here, it became the duty of the trial court to sustain defendant's motions, and failure to do so constituted reversible error.

The judgment is accordingly reversed with instructions to dismiss the action.

MR. CHIEF JUSTICE HILLIARD dissents.