Charlene R. STANLEY and Larry R. Stanley, Plaintiffs–Appellants,

v.

CREIGHTON COMPANY d/b/a Cottonwood Terrace Apartments, Defendant–Appellee.

No. 94CA1620.

Colorado Court of Appeals, Div. V.

Jan. 25, 1996.

Jeffrey J. Colerick, Colorado Springs, for Plaintiffs-Appellants.

Harris, Karstaedt, Jamison & Powers, A. Peter Gregory, Denver, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this premises liability action, plaintiffs, Charlene R. and Larry R. Stanley (tenants), appeal from the summary judgment entered in favor of defendant, Creighton Company d/b/a Cottonwood Terrace Apartments (landlord). The issue presented is the validity of an exculpatory clause included in the parties' residential rental agreement. We hold that the clause is invalid. Therefore, we reverse and remand.

Tenants alleged in their complaint that Charlene Stanley was injured when she slipped on a spot of clear ice and fell down the stairs. Tenants alleged that the ice had formed on the landing in front of their apartment because of a negligently repaired leak in the roof.

The Colorado Actions Against Landowners Act (premises liability act), § 13–21–115(3)(c)(I), C.R.S. (1995 Cum.Supp.), provides that a landowner is liable to invitees for damages caused by the "landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known."

The exculpatory clause of the lease, on the other hand, stated:

> Lessor shall not be responsible for any damage or injury said Lessee may sustain from any cause whatsoever *unless injury is a direct result of the Lessor's gross negligence.* (emphasis added)

The parties agreed that the premises liability act governs landlord-tenant premises liability actions, but in its motion for summary judgment landlord argued that the exculpatory clause modified its statutory duty and prohibited all claims except those resulting from its gross negligence. The trial court agreed, and granted summary judgment to landlord because plaintiffs had failed to plead or establish a triable issue of fact on that theory.

On appeal, tenants contend that the lease provision is invalid. We agree.

■ The issue of the validity of an exculpatory clause implicates competing principles: freedom of contract and responsibility for damages caused by one's own negligent acts. *Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781 (Colo.1989).

■ In order to balance these principles fairly, the determination of the validity of a particular clause requires (1) consideration of the public policy implications of the subject matter involved (whether it concerns a duty to the public and whether the type of services performed affects the public interest)

and (2) the circumstances of the specific contract (whether the contract was fairly entered into and whether the parties' intentions were expressed in clear and unambiguous language). The determination of the validity of an exculpatory clause is a question of law for the court. *Jones v. Dressel*, 623 P.2d 370 (Colo.1981).

### A.

■ We conclude that the subject matter involved here—waiver of claims of lessor negligence through an exculpatory clause in a form residential lease—is a matter of public interest.

Development of public policy concerning landlord/tenant relations is within the province of the General Assembly, *see Blackwell v. Del Bosco*, 191 Colo. 344, 558 P.2d 563 (1976), and the relationship between residential tenants and landlords has been regulated in Colorado since 1971. *See* § 38–12–101, et seq. C.R.S. (1982 Repl.Vol. 16A) (entitled "Tenants and Landlords"); *see also* §§ 13–40–104, 13–40–107, 13–40–108, 13–40–110, 13–40–121, C.R.S. (1987 Repl.Vol. 6A), and § 13–40–107.5, C.R.S. (1995 Cum.Supp.) (within article entitled "Forcible Entry and Detainer").

■ In addition, codification of the premises liability act confirms that landowner negligence is an issue of public concern. The statute, which includes, *inter alia,* the duty of a landlord to its tenant, *see Jules v. Embassy Properties, Inc.,* 905 P.2d 13 (Colo. App.1995) (statute creates duty for landowners); *see also Lakeview Associates v. Maes,* 907 P.2d 580 (Colo. 1995) (tenant is invitee in residential common area), explicitly sets forth that its purpose is to:

(a) … *Promote a state policy* of responsibility by both landowners and those upon the land as well as to assure that the ability of an injured party to recover is correlated with his status as a trespasser, licensee, or invitee;

. . . .

(c) … to assure that the language of this section effectuates these legitimate governmental interests …

(d) … [and] also to create a legal climate which will promote private property rights and commercial enterprise and will foster the availability and affordability of insurance . . . .

. . . .

Section 13–21–115(1.5), C.R.S. (1995 Cum. Supp.) (emphasis added).

■ Since a public policy need not be explicitly spelled out in a statute in order to require invalidation of a contrary contract provision, the fact that the General Assembly has codified that policy is an indication of its public importance. *See Federal Deposit Insurance Corp. v. American Casualty Co.,* 843 P.2d 1285 (Colo.1992) (regulatory exclusion in bank directors' liability insurance policy conflicts with public policy of Colorado Banking Code despite lack of an explicit policy statement).

Here, the General Assembly not only codified public policy concerning premises liability, *see* Colo. Sess. Laws 1986, ch. 109, § 13–21–115 at 683, but reestablished it by amendment after the court found the original version unconstitutional. *See* Colo. Sess. Laws 1990, ch. 107, § 13–21–115(1.5) at 867; *Gallegos v. Phipps,* 779 P.2d 856 (Colo.1989).

Moreover, although the General Assembly—by explicitly precluding waiver by contract—may indicate the preeminence of a statutory public policy, a statute, as here, need not explicitly bar waiver by contract for the contract provision to be invalid because it is contrary to public policy. *Compare Garceau v. Iowa Kemper Insurance Co.,* 859 P.2d 243 (Colo.App.1993) (No-fault Act explicitly requires auto insurance policy to comply with statutory minimums) *and Padilla v. Industrial Commission,* 696 P.2d 273 (Colo. 1985) (regarding workers' compensation) *with Francam Building Corp. v. Fail,* 646 P.2d 345, 348 (Colo.1982) (contract can only abrogate statutory provisions in absence of statute barring waiver and countervailing public policy); *see also University of Denver v. Industrial Commission,* 138 Colo. 505, 335 P.2d 292 (1959).

■ Furthermore, it is undisputed that a landlord's services are generally held out to the public and that housing rental is a matter of practical necessity to the public. *See Henrioulle v. Marin Ventures, Inc.*, 20 Cal.3d 512, 143 Cal.Rptr. 247, 573 P.2d 465 (1978) (recognizing residential housing as basic necessity of life important to public policy analysis); *McCutcheon v. United Homes Corp.*, 79 Wash.2d 443, 486 P.2d 1093 (1971) (recognizing recent increase in public use of rental units as a matter of public concern). Consequently, a public policy that protects tenants from a waiver clause is more compelling here, under a form residential lease, than it would be under a commercial lease. *See Ultimate Computer Services, Inc. v. Biltmore Realty Co.*, 183 N.J.Super. 144, 443 A.2d 723 (1982) (exculpatory clause void as against public policy in residential leases, but effective in commercial leases).

■ Finally, when a common area is involved, a major justification for upholding a private contract clause is eliminated—the tenant has neither any prospect of controlling the landlord's invocation of the lease waiver clause nor an ability to correct hazardous conditions. *See Francam Building Corp. v. Fail, supra.* It is undisputed here that the lease exculpatory clause applied to, and the accident occurred in, a common area under the landlord's exclusive control.

■ In addition, permitting abrogation of responsibility to use reasonable care in common areas also is likely to have an adverse effect on non-parties to the agreement. *See, e.g., Cappaert v. Junker,* 413 So.2d 378 (Miss. 1982) (exculpatory clause immunizing against negligence in maintaining common areas void as against public policy); *see also* B.D. Morant, *Contracts Limiting Liability: A Paradox with Tacit Solutions,* 69 Tul. L.Rev. 715 (1995) (states legitimately restrict parties' "freedom of contract" on public policy grounds in order to protect the public from negative consequences of the agreement).

B.

Consideration of the bargaining power of the parties also indicates that the exculpatory clause is invalid.

■ "Exculpatory agreements are not necessarily void ... as long as one party is not 'at such obvious disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence.'" *Heil Valley Ranch, Inc. v. Simkin, supra,* 784 P.2d at 784. "[B]argains will be upheld ... so long as they are *founded upon relatively equal bargaining positions* and are not manifestly unjust or injurious to the general welfare." *Superior Oil Co. v. Western Slope Gas Co.*, 549 F.Supp. 463, 468 (D.Colo. 1982) (emphasis added); *see also* B.D. Morant, *Contracts Limiting Liability: A Paradox with Tacit Solutions, supra* (states may legitimately restrict parties' "freedom of contract" on public policy grounds to shield weaker parties from the consequence of their bargains); *Lloyd v. Service Corporation of Alabama, Inc.*, 453 So.2d 735 (Ala.1984) (exculpatory clause in residential lease contrary to public policy when not fairly bargained for); *cf. Porter v. Lumbermen's Investment Corp.*, 606 S.W.2d 715 (Tex.Civ.App.1980) (waiver effective against personal injury claim when there is equality in bargaining power). *But see O'Callaghan v. Waller & Beckwith Realty Co.*, 15 Ill.2d 436, 155 N.E.2d 545 (1958) (validity of exculpatory clauses in residential leases is subject for legislative action despite housing shortage).

■ Here, it is undisputed that the clause was part of a standardized rental agreement, signed with no opportunity for negotiation or option for protection against negligence upon payment of an increased rental rate or special fee. Moreover, the supreme court has recognized a disparity of bargaining power in a residential landlord-tenant relationship. *See Anderson v. Rosebrook,* 737 P.2d 417 (Colo.1987).

Because the other factors we have considered are compelling, we need not specifically decide if the language of the clause clearly expresses the intention of the parties. *See Barker v. Colorado Region–Sports Car Club of America, Inc.,* 35 Colo.App. 73, 532 P.2d 372 (1974). We note, however, that in the context of a personal injury action, the supreme court has set an extremely high standard for clarity by interpreting a seemingly

clear and comprehensive exculpatory clause to apply only to damages to personal property. *See Miller–DuPont, Inc. v. Service,* 120 Colo. 131, 138, 208 P.2d 87, 91 (1949) ("Tenant does covenant ... to neither hold nor attempt to hold the Landlord liable for any injury or damage either proximate or remote ... by reason of the negligence or default of the owners or occupants thereof").

Consequently, in consideration of all the relevant factors, *see Jones v. Dressel, supra,* we hold that the exculpatory clause in the parties' residential rental agreement is void. We need not, therefore, address tenant's other arguments.

The summary judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

CASEBOLT and ROY , JJ., concur.