Fred GROSSMAN, M.D.,
Plaintiff–Appellant,

v.

COLUMBINE MEDICAL GROUP, INC. and FHP of Colorado, Inc. a/k/a Pacifi-care of Colorado, Inc., Defendants–Ap-pellees.

No. 98CA0688.

Colorado Court of Appeals,
Div. II.

Nov. 12, 1999.

Rehearing Denied Jan. 13, 2000.

As Modified Jan. 14, 2000.

Certiorari Denied Oct. 23, 2000.

McKenna & Cuneo, L.L.P., Daniel S. Hoffman, Wendy B. Fisher, Denver, Colorado, Douglas B. Mishkin, Washington, D.C., for Plaintiff–Appellant.

Rothgerber, Johnson & Lyons, LLP, Gregory B. Kanan, Cindy C. Oliver, Denver, Colorado, for Defendant–Appellee Columbine Medical Group, Inc.

Kennedy & Christopher, P.C., John R. Mann, Denver, Colorado, for Defendant–Appellee FHP of Colorado, Inc.

Opinion by Judge STERNBERG.*

In this breach of contract action, plaintiff, Fred Grossman, (the physician) appeals from the summary judgment entered in favor of defendant Columbine Medical Group, Inc. (CMG), and from the judgment dismissing his claims against CMG and defendant FHP of Colorado, Inc. (FHP). We affirm.

CMG is an independent practice association whose member physicians provide medical services to patients enrolled in prepaid health plans. In 1992, the physician entered into a service agreement with CMG in which he agreed to provide services to patients who were members of FHP's managed health care plan. The contract provided that either party could terminate the agreement with or without cause upon providing the other party with ninety days written notice.

In 1994, CMG sent a letter to the physician informing him that it was exercising its right to terminate the agreement. After meeting with the physician at his request, CMG reaffirmed its decision to terminate his physician service contract.

The physician then filed this suit, seeking reinstatement, compensatory damages, and a hearing in which to respond to any asserted basis for the termination. CMG moved to dismiss and for summary judgment, arguing, among other things, that the express terms of the agreement allowed for termination without cause and that, therefore, it had not breached the agreement. FHP moved to dismiss, contending that the complaint failed to state a claim for relief against FHP because it was not a party to the agreement between the physician and CMG.

The trial court granted CMG's motion for summary judgment and dismissed the physician's claims against FHP with prejudice. This appeal followed.

I.

The physician contends that the termination without cause provision in the physician service agreement is void as against public policy because of its negative impact on the physician-patient relationship and its disruption of the continuity of patient care. He argues that, at a minimum, he was entitled to a hearing to address the reasons for his termination.

A.

We address first FHP's assertion that we should not reach this contention because, in their view, it was not raised in the trial court. *See Estate of Stevenson v. Hollywood Bar & Café, Inc.*, 832 P.2d 718 (Colo.1992) (issues may not be raised for the first time on appeal where the trial court has not had the opportunity to rule on them).

The question whether this issue was raised in the trial court is a close one; however, from our review of the record we conclude that it was raised sufficiently to require us to address the question.

B.

In support of his public policy arguments, the physician notes that, in the area of managed health care, courts have recognized the importance of maintaining stability in physi-

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1999.

cian-patient relationships. *See Harper v. Healthsource New Hampshire, Inc.*, 140 N.H. 770, 674 A.2d 962 (1996). The physician also cites *Potvin v. Metropolitan Life Insurance Co.*, 63 Cal.Rptr.2d 202 (Cal.Dist. Ct.App.1997), *petition for review granted*, 67 Cal.Rptr.2d 1, 941 P.2d 1121 (July 30, 1997), in which a physician prevailed in a case in which he had been terminated in a "deselection" proceeding.

■ While these and other cases relied upon by the physician, and the dissenting opinion, present persuasive public policy considerations, in our view a contrary public policy has already been adopted in Colorado. In 1996, the General Assembly enacted § 10–16–121, C.R.S.1999, which sets forth the required contract provisions in agreements between providers and carriers. Section 10–16–121(2)(c), C.R.S.1999, provides that nothing shall be construed to prohibit a carrier from:

> Terminating a contract with a provider pursuant to a contract provision that allows either party to the contract to terminate the contract without cause pursuant to specific notice requirements that are the same for both parties.

Section 10–16–102, C.R.S.1999, defines "carrier" as "any entity that provides health coverage" and "provider" to include any physician.

Additionally, in 1997, the General Assembly enacted Section 10–16–705(7), C.R.S.1999, which provides that a carrier and a participating provider shall provide at least sixty days written notice to each other before terminating a contract without cause.

■ It is true, as the physician argues, that these statutes were adopted after the termination of plaintiff's contract and have no direct applicability here. Nevertheless, even though a statute is enacted subsequent to the particular events in question, it may be instructive in determining public policy on a particular issue. *See Hilberg v. F.W. Woolworth Co.*, 761 P.2d 236 (Colo.App.1988) (construing statute enacted subsequent to injury in determining public policy relative to strict products liability in the sale and/or distribution of firearms).

■ Accordingly, we view §§ 10–16–121 and 10–16–705(7) as expressions of the intent of the General Assembly that termination clauses should be permitted in contracts between doctors and health care providers. It is not for the courts to enunciate the public policy of the state if, as here, the General Assembly has spoken on the issue. *See Swieckowski v. City of Fort Collins*, 934 P.2d 1380 (Colo.1997).

## II.

The physician next argues that, because the termination without cause provision is void as against public policy, CMG was entitled to terminate him only for cause and after providing him with an opportunity to be heard. In light of our ruling above, this contention fails.

■ We recognize that every contract contains an implied duty of good faith and fair dealing. However, this implied duty may be relied upon only when the manner of performance allows for discretion on the part of either party; it may not contradict terms or conditions for which the parties have bargained. *Amoco Oil Co. v. Ervin*, 908 P.2d 493 (Colo.1995).

■ Here, the termination clause expressly sets forth the right of both parties to terminate the contract for any reason. Hence, the physician cannot rely on the implied duty of good faith and fair dealing to circumvent terms for which he expressly bargained. *See Soderlun v. Public Service Co.*, 944 P.2d 616 (Colo.App.1997) (covenant of good faith and fair dealing cannot limit an employer's right to discharge without cause unless there is express or implied promise, independent of the covenant of good faith itself, restricting that right).

The physician contends that he has status as a "preferred provider" as opposed to an employee or an independent contractor, and as such should be treated differently under Colorado law. However, we note that the physician services agreement characterized plaintiff as an independent contractor, and indeed, plaintiff alleged in his pleadings before the trial court that he was an indepen-

dent contractor. Therefore, we decline to consider his contrary position on appeal. *See People in Interest of R.L.,* 961 P.2d 606 (Colo.App.1998).

### III.

■ Finally, we reject FHP's claim that it is entitled to attorney fees because plaintiff's appeal of the dismissal of his claim against it is frivolous. *See Wood Brothers Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993) (purpose underlying award of attorney fees and costs for frivolous appeal is to deter egregious conduct, not to discourage legal theories that, while having no support in decisional law, may be persuasive by virtue of unique character of case). We do not view this appeal as frivolous under this standard.

The judgments are affirmed.

Judge PLANK concurs.

Judge JONES concurs in part and dissents in part.

Judge JONES concurring in part and dissenting in part.

I concur with Part III of the majority opinion. However, I respectfully dissent to Parts I and II. I believe the trial court erred in granting the motions to dismiss and for summary judgment of defendants Columbine Medical Group, Inc. (CMG) and FHP of Colorado, Inc. (FHP).

I agree with plaintiff that the termination without cause provision in the physician service agreement is void as against public policy because of the strong potential for the provision to negatively impact on the physician-patient relationship and on the quality and continuity of patient care, which should be determinations grounded in medical science and not bottom-line corporate economics.

Initially, I concur with the majority that, although a close question, a review of the record reveals that this issue was raised sufficiently to require us to address it on appeal. *Cf. Estate of Stevenson v. Hollywood Bar,* 832 P.2d 718 (Colo.1992).

Courts will not enforce contracts or contract terms that are void as contrary to public policy. A contractual provision is void "if the interest in enforcing the provision is clearly outweighed by a contrary public policy." *Federal Deposit Insurance Corporation v. American Casualty Co.,* 843 P.2d 1285, 1290 (Colo.1992) (*F.D.I.C.*); *Martin Marietta Corporation v. Lorenz,* 823 P.2d 100 (Colo.1992); *Stanley v. Creighton Co.,* 911 P.2d 705 (Colo.App.1996).

Public policy need not be explicitly set out in a statute in order to require the voiding of a contrary provision in a contract. *Stanley v. Creighton Co., supra.* It is enough if a court, in determining whether a contract provision is void as against public policy, applies the requisite balancing test, and can determine that the interest in enforcing the provision is outweighed by a contrary public policy. *F.D.I.C., supra.*

Section 10–16–121(2)(c), C.R.S.1999 sets forth the basis for the termination without cause provision in the contract at issue here. The statute states, in pertinent part:

> Nothing in subsection (1) of this section shall be construed to prohibit a carrier from:
>
> . . .
>
> Terminating a contract with a provider pursuant to a contract provision that allows either party to the contract to terminate the contract without cause pursuant to specific notice requirements that are the same for both parties.

The contract at issue here complies with this and any other applicable statutes concerning notice requirements.

Based on the detailed rationale argued by plaintiff, I conclude that enforcement of the termination without cause provision here is clearly outweighed by a more important and publicly necessary policy of protecting the ability of physicians to exercise their best judgment to preserve the life and health of citizens through medical science. I further conclude that the contract provision, as applied here, injures the public, is against the public good, and is inconsistent with sound public policy. *See Oliver v. Wilder,* 27 Colo. App. 337, 149 P. 275 (1915).

The overriding public policy against which I determine the contract provision cannot stand is grounded in the tradition and practice that almost nothing should be allowed to come between a physician and his or her attempts to protect the health of a patient. It is this notion that justified establishment of a public board of medical examiners to protect the public against improper practice of medicine. *See* §§ 12–36–102 to 12–36–104, C.R.S.1999.

This policy of continuity and quality of health care is at the heart of the American Medical Association's Code of Medical Ethics. *See* AMA, *Fundamental Elements of the Patient–Physician Relationship* (1994)(*Fundamental Elements*). This policy is also the rationale for other statutes that are designed to protect patients. *See* §§ 10–16–701 to 10–16–708, C.R.S.1999 (Consumer Protection Standards Act for the Operation of Managed Care Plans); § 10–16–121, C.R.S.1999 (protecting ability of health care providers to make health care decisions without interference from health insurance carriers); § 26–4–117(g), C.R.S.1999 (requiring continuity of care for new enrollees who have special needs).

Because I believe that the termination without cause provision significantly impacts detrimentally on the integrity, stability, and maintenance of the patient-physician relationship, the provision is clearly outweighed by the public policy of the state to protect that relationship.

When a physician is terminated as occurred here, the patient-physician relationship may be severed completely because it may be impossible for a patient to use the de-selected physician any longer due to lack of insurance and other financial constraints. Furthermore, severance of the patient-physician relationship is compelled without the consent of either party, each typically having the exclusive right to terminate their relationship. *See* § 13–90–107(1)(d), C.R.S.1999 (the patient-physician privilege); AMA, *Fundamental Elements* (1994).

Finally, I conclude that the termination without cause provision is clearly outweighed by the public policy of protecting a physician's ability to practice medicine.

This policy, which is recognized in the noncompetition statute, prohibits covenants not to compete that restrict the right of a physician to practice medicine. Section 8–2–113(3), C.R.S.1999.

Deselection likely has the effect of separating physicians from their patients and, thereby, prohibiting their practice of medicine as to a large segment of their patient load. The substantial detrimental effect on the ability of deselected physicians to earn a livelihood is an important part of why the termination without cause provision is clearly outweighed by predominant public policy. *See Potvin v. Metropolitan Life Insurance Co.*, 63 Cal. Rptr.2d 202, 208–209 (Cal.App.1997), *cert. granted*, 67 Cal.Rptr.2d 1, 941 P.2d 1121 (1997) (physician must receive fair hearing before HMO can remove physician from provider network, even with termination without cause provision in provider contract, where terminating party controls "substantial economic interests" concerning the physician); *see also Ambrosino v. Metropolitan Life Insurance Co.*, 899 F.Supp. 438 (N.D.Cal.1995) (physician has right to fair hearing regarding termination from insurer's network); *Delta Dental Plan v. Banasky*, 27 Cal.App.4th 1598, 33 Cal.Rptr.2d 381 (1994) (to same effect regarding dentists *viz.* a dental plan).

For these public policy reasons, I conclude that the trial court erred in entering summary judgment in favor of defendants. I, therefore, would reverse the summary judgment and dismissal of plaintiff's action and remand the cause for further proceedings concerning plaintiff's termination as follows: Because the termination without cause provision of the contract is void as against public policy, I would require that, on remand, plaintiff receive a fair hearing, including the meaningful opportunity to respond, and that termination may only be upheld for cause that does not, as a matter of law, violate public policy.