**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 9 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROY MINCIN and KEMPER
INSURANCE COMPANIES, an
Illinois corporation,

Plaintiffs - Appellants,

v.

No. 01-1256

VAIL HOLDINGS, INC., a Colorado
corporation, also known as Vail
Associates, Inc.; VAIL ASSOCIATES,
INC., a Colorado corporation,

Defendants - Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 99-M-1676)**

---

Kristin M. Murphy, Denver, Colorado (Robert A. Weinberger, Denver, Colorado,
for Appellant Kemper Insurance Co., and Glen F. Gordon, Boulder, Colorado, for
Appellant Roy Mincin, with her on the briefs), appearing for Appellants.

Jere K. Smith (Peter W. Rietz, with her on the brief), Rietz and Smith, L.L.C.,
Dillon, Colorado, appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **HENRY**, and **BRISCOE**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

Plaintiffs Roy Mincin and Kemper Insurance Co. ("Kemper") appeal the district court order granting partial summary judgment for the defendants and denying partial summary judgment for the plaintiffs. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

Roy Mincin decided to go mountain biking while on a business trip in Vail, Colorado. At the base of Vail Mountain, he purchased a gondola lift ticket and a bike rental coupon, which he was instructed to redeem at the bike rental area atop the mountain. At the rental area, Mincin was presented with a Bicycle Rental Agreement which contained exculpatory language and which he signed without reading completely. The Bicycle Rental Agreement read:

> PLEASE READ CAREFULLY. THIS IS A RELEASE OF LIABILITY AND WAIVER OF LEGAL RIGHTS.
>
> I acknowledge that participation in mountain biking or transporting a mountain bike up a ski lift (the "Activity") is HAZARDOUS and involves a great risk of physical injury. I expressly assume all risks associated with participating in the Activity, including without limitation: changing weather conditions; existing and changing trail conditions; rocks; stumps; trees; erosion; collisions with natural objects; man-made objects; or other persons; and variations in terrain. Despite all the risks, I voluntarily choose to participate in the Activity.
>
> I agree to utilize only marked bicycle trails . . . at all times. . . .
>
> In consideration of renting the equipment and receiving permission to take part in the Activity, I agree to release and hold harmless Vail Associates, Inc., its subsidiaries and affiliates, the United States Department of

-2-

Agriculture Forest Services, their representative agents, officers, directors, owners, coordinators and employees (collectively, the "Released Parties") for any and all claims I might state as a result of physical injury, including death, or property damages sustained in connection with the Activity, including those claims based on negligence or breach of warranty.

I agree to indemnify the Released Parties for any claims whatsoever brought by a third party which I may cause.

. . . .

This agreement is binding on my estate, heirs, administrators and assigns and shall be governed by the laws of Colorado.

Mincin was riding the mountain bike on a designated trail when he was diverted into the grass by an anomaly in the trail. Mincin reasoned that he would be able to rejoin the trail in a matter of seconds by continuing straight through the grass. He ran into an unmarked man-made drainage ditch, however, which was adjacent to the designated trail and concealed by high grass. Mincin suffered serious injuries, including paraplegia.

Kemper is the worker's compensation insurance carrier for Mincin's employer. Mincin received worker's compensation benefits from Kemper for his injuries.

Mincin filed suit in the United States District Court for the District of Colorado against Vail Holdings, Inc. and Vail Associates, Inc. (collectively "Vail"). Kemper filed a separate action against Vail to recover monies paid to

Mincin as a result of his personal injuries. Kemper later dismissed that action and joined Mincin's.

The parties filed cross-motions for partial summary judgment concerning the effect of the Bicycle Rental Agreement. The district court granted Vail's motion and denied the plaintiffs' motion, holding that the exculpatory clause was valid under Colorado law and that the Bicycle Rental Agreement therefore barred the action for both Mincin and Kemper. Mincin and Kemper then moved to dismiss their remaining claims in order to secure a final judgment.

## II. Discussion.

### A. Standard of Review

We review the grant of a motion for summary judgment de novo. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We construe all facts and make reasonable inferences in the light most favorable to the nonmoving party. Mauldin v. Worldcom, Inc., 263 F.3d 1205, 1211 (10th Cir. 2001). The nonmoving party may not, however, rely solely on its pleadings but must set forth specific facts showing that there is a genuine issue for trial with

regard to those dispositive matters for which it carries the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).[1]

A federal court sitting in diversity applies the substantive law of the forum state. Commerce Bank, N.A. v. Chrysler Realty Corp., 244 F.3d 777, 780 (10th Cir. 2001). We review de novo the district court's interpretation of Colorado state law. Id.

B.     Consideration

Mincin argues that because he paid for the bicycle at the bottom of the mountain and did not sign the Bicycle Rental Agreement until he actually received the bicycle at the top of the mountain, the Bicycle Rental Agreement constituted a modification to the initial rental agreement and therefore required additional consideration. We disagree.

Under Colorado law, a contract modification generally requires additional consideration. Hoagland v. Celebrity Homes, Inc., 572 P.2d 493, 494 (Colo. Ct. App. 1977) (citing H & W Paving Co. v. Asphalt Paving Co., 364 P.2d 185, 186 (Colo. 1961)). Where there is a sufficient time lapse between the initial agreement and the subsequent alteration, Colorado courts characterize the subsequent change as a contract modification requiring separate consideration.

---

[1] Because we conduct an independent review of the record, we do not address the district court's language that plaintiffs argue constituted a decision on an issue of material fact.

For example, in  H & W Paving Co.  , the Colorado Supreme Court held that a

change to a contract made several months after the original contract was signed

required additional consideration.  364 P.2d at 186.  Similarly, in        Hoagland , the

Colorado Court of Appeals held that a release from liability signed eight months

after the initial contract required additional consideration.  572 P.2d at 494.

In the instant case, however, the two events were separated by a matter of

minutes and are better considered part of the same transaction.  Mincin paid for

the bicycle rental and gondola lift ticket at the bottom of the mountain, where he

received a coupon for the bicycle rental.  He then rode the gondola to the top of

the mountain, where he was presented with the Bicycle Rental Agreement while

being fitted for and before being presented with his bicycle.  Under these

circumstances, we hold that the Bicycle Rental Agreement did not constitute a

modification to the initial agreement.  Hence, the Bicycle Rental Agreement

required no additional consideration in order to be enforceable.        See Beehner v.

Cragun Corp., 636 N.W.2d 821, 829 (Minn. Ct. App. 2001) ("This court has held

that an exculpatory agreement signed after a fee to participate in a recreational

activity has been paid is part of the same transaction and is therefore enforceable

without additional consideration other than permission to participate in the

activity."); Hewitt v. Miller, 521 P.2d 244, 248 n.3 (Wash. Ct. App. 1974)

(concluding that release signed by scuba diving student after payment of fee was

-6-

an integrated part of the whole transaction and was thus supported by original consideration).

C.    The Validity of the Exculpatory Clause

The district court found that the exculpatory clause in the Bicycle Rental Agreement signed by Mincin was valid, and therefore dismissed Mincin's claim. Plaintiffs claim that the district court erred both in upholding the exculpatory clause and in its interpretation of the clause. We disagree.

In determining whether an exculpatory agreement is valid under Colorado law, we must consider four factors: (1) whether the service provided involves a duty to the public; (2) the nature of the service provided; (3) whether the agreement was fairly entered into; and (4) whether the agreement is clear and unambiguous. Jones v. Dressel, 623 P.2d 370, 376 (Colo. 1981). Each of the following militates against the validity of an exculpatory clause: a duty to the public; that the service provided is a "practical necessity"; unfairness; and ambiguity. Id.

Regarding the first factor, plaintiffs contend that mountain biking is an issue of public concern and involves a public duty. In support of this contention, plaintiffs rely upon language in Stanley v. Creighton, 911 P.2d 705 (Colo. Ct. App. 1996). In Stanley, the Colorado Court of Appeals invalidated an exculpatory clause in the context of a residential lease. Id. at 709. In concluding that the

landowner-residential tenant relationship involved a public interest sufficient to invalidate an exculpatory agreement, the Stanley court relied in part on the Colorado Premises Liability Act ("CPLA"), Colo. Rev. Stat. § 13-21-115. Id. at 707. The court noted that the CPLA "confirms that landowner negligence is an issue of public concern." Id. Relying on this language, plaintiffs argue that exculpatory agreements are per se invalid in the context of negligence suits against landowners for damages sustained on their properties. We reject this broad construction of Stanley for two reasons.

First, although the Stanley court relied in part on the CPLA, the court placed greater emphasis on the essential nature of residential housing. Id. at 707-08. Landowner-residential tenant relations implicate a heightened degree of public concern as "housing rental is a matter of practical necessity to the public." Id. at 708. The court further noted the Colorado General Assembly's continuous regulation of the landowner-residential tenant relationship over the past thirty years. Id. at 707.

Second, other language in Stanley is inconsistent with plaintiffs' position. Later in its opinion, the court alluded to a distinction between residential and commercial leases, implying that an exculpatory clause might well be valid in the context of a commercial lease. Id. at 708. Such disparate treatment of commercial and residential tenants is, of course, at odds with plaintiffs' proffered

-8-

interpretation of Stanley.

The commercial-residential distinction drawn in Stanley is in accord with numerous cases under Colorado law upholding exculpatory agreements in other commercial and recreational contexts. In fact, a number of these cases specifically hold that a recreational activity does not involve a public duty:

> It is the essential nature of the service that gives the party seeking exculpation an unfair bargaining advantage and results in the contract running afoul of public policy. The service here is recreational. Although skiing is a recreational activity enjoyed by many, by definition and common sense, it is neither a matter of great public importance nor a matter of practical necessity. Therefore, there is no public duty that prevents enforcement of this agreement.

Bauer v. Aspen Highlands Skiing Corp., 788 F. Supp. 472, 474 (D. Colo. 1992) (upholding an exculpatory clause in the context of ski equipment rental); see also Lahey v. Covington, 964 F. Supp. 1440, 1445 (D. Colo. 1996) (same regarding white water rafting); Brooks v. Timberline Tours, Inc., 941 F. Supp. 959, 962 (D. Colo. 1996) (same regarding snowmobiling); Jones, 623 P.2d at 377-78 (same regarding skydiving).

Plaintiffs attempt to distinguish these cases as involving skiing and horseback riding, both of which are activities covered by Colorado statutes specifically limiting landowner liability. See COLO. REV. STAT. §§ 33-44-101 to -114 ("Ski Safety Act"); id. § 13-21-119 (equine and llama activities); Bauer, 788 F. Supp. at 474-75 (skiing); B & B Livery, Inc. v. Riehl, 960 P.2d 134, 138 (Colo.

1998) (upholding exculpatory agreement in the context of horseback riding, because the agreement was unambiguous). Plaintiffs argue that because statutes limit landowner liability in these particular commercial settings but not in the context of mountain biking, we should not limit landowner liability in the context of bicycle rental, under the maxim expressio unius est exclusio alterius. Harris v. Owens, 264 F.3d 1282, 1296 (10th Cir. 2001). This maxim represents the principle that "the expression of one thing is the exclusion of another." Id.

This argument fails for two reasons. First, plaintiffs' argument misconstrues the issue in this case. The issue is not whether the Colorado General Assembly has limited landowner liability or whether this court should do so. Rather, it is whether Mincin and Vail could agree to limit Vail's liability – that is, whether an exculpatory clause is valid in the context of a commercial bicycle rental agreement. The fact that the Colorado legislature has limited landowner liability in the contexts of horseback riding and skiing is relevant to the question of whether landowner liability might be limited in other circumstances absent a contract. It is irrelevant, however, to the issue in this case – whether an exculpatory agreement is enforceable in the context of a bicycle rental agreement.

Second, plaintiffs ignore those cases involving Colorado law in which no specific statute governed the transaction and the court upheld an exculpatory agreement. E.g., Mullan v. Quickie Aircraft Corp., 797 F.2d 845, 852-53 (10th

Cir. 1986) (sale of aircraft kit); Lahey, 964 F. Supp. at 1445 (white water rafting); Brooks, 941 F. Supp. at 962 (snowmobiling); Jones, 623 P.2d at 377-78 (skydiving). The numerous cases upholding exculpatory agreements in a variety of commercial contexts severely undercut plaintiffs' theory that such agreements are per se unenforceable in the area of landowner negligence.

Consideration of the second and third Jones factors – the nature of the service provided and whether the agreement was entered into fairly – further undermines plaintiffs' claim. The Stanley court stressed the disparity of bargaining power created by the "practical necessity" of housing rental in reaching its decision to invalidate the exculpatory clause in the context of the landowner-residential tenant relationship. Id. at 708. In this case, however, there is no such "practical necessity" as mountain biking is not an essential activity. Thus, Mincin did not enter into the contract from an inferior bargaining position. Further, Mincin fails to point to any other unfair circumstances surrounding the parties' contract.

Thus, the first three Jones factors militate against plaintiffs' broad interpretation of Stanley. Stanley does not represent a per se prohibition against exculpatory agreements in the context of negligence suits against landowners. [2]

---

[2] Contrary to plaintiffs' assertions, finding the exculpatory clause valid does not abrogate the Colorado Premises Liability Act. The CPLA does not speak
(continued...)

This construction of Stanley best comports with the standard for identifying a public duty under Colorado law, as first articulated in Jones. The Jones court provided the following guidance regarding the types of services that involve public duties and instances in which exculpatory agreements might trigger fairness concerns:

> The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. . . . As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

623 P.2d at 376 (quoting Tunkl v. Regents of Univ. of Cal., 383 P.2d 441, 444 (Cal. 1963)). Thus, Stanley is distinguishable from the present case in that the public need and disparity of bargaining power present in the landowner-residential tenant area are wholly absent in the context of mountain biking and bicycle rental.

The final factor of the Jones test requires us to consider whether the

---

[2](...continued)
to exculpatory agreements. The CPLA is relevant to this case only insofar as it demonstrates that, at least in some circumstances, premises liability is an issue of public concern grave enough to invalidate an otherwise valid exculpatory agreement.

We also do not see the relevance of the fact that a landowner cannot delegate duties under the CPLA to, for example, an independent contractor. Springer v. City and County of Denver, 13 P.3d 794, 804 (Colo. 2000). The fact that certain duties of a landowner are nondelegable does not mean that the landowner and the party to whom the duty is owed may not contract to extinguish those duties altogether.

agreement is clear and unambiguous. We agree with the district court that the language of the exculpatory agreement is unambiguous. A contractual term is ambiguous when it is susceptible to more than one reasonable interpretation. Browder v. U.S. Fid. & Guar. Co., 893 P.2d 132, 133 (Colo. 2000). Plaintiffs first argue that the exculpatory clause is ambiguous as to whether it bars claims by subrogees. In support of this position, plaintiffs point to Rowan v. Vail Holdings, Inc., 31 F. Supp. 2d 889 (D. Colo. 1998). In Rowan, a skier signed an exculpatory agreement that released Vail from "any and all claims I might state." Id. at 893. The agreement also contained language binding the agreement on "my estate, heirs, administrators and assigns." Id. The court found that this discrepancy rendered the agreement ambiguous as to whether the skier's parents could institute a wrongful death suit, which is based on a statutory cause of action belonging to a decedent's heirs. Id. at 899. The court reasoned that "claims 'I' might state are, by necessity, limited to those of the signatory. . . . A wrongful death action is not encompassed by such language, since Rowan could not assert such a claim on his own behalf. Instead, a wrongful death claim is an independent action belonging to Rowan's heirs." Id.

The instant case is distinguishable. It is true that the rental agreement signed by Mincin contained language almost identical to that found in Rowan. In contrast to a wrongful death claim, however, a subrogation claim is not an

independent action. "Subrogation is the right of the insurer to be put *in the position of the insured* in order to pursue recovery from third parties legally responsible to the insured for a loss the insurer has paid." *Porter v. Castle Rock Ford Lincoln Mercury, Inc.*, 895 P.2d 1146, 1148 (Colo. Ct. App. 1995) (emphasis added). Indeed, "it is elementary that one cannot acquire by subrogation what another whose rights he claims did not have." *Browder*, 893 P.2d at 136 n.4 (quoting *U.S. v. Munsey Trust Co.*, 322 U.S. 234, 242 (1947)). Accordingly, because a subrogation claim by Kemper asserts *Mincin's* rights, it is plainly precluded by the "I might state" language of the exculpatory agreement.

Plaintiffs also contend that the *expressio unius* canon of construction operates to exclude subrogation claims from the purview of the exculpatory clause. Plaintiffs argue that, because the agreement explicitly binds Mincin and his estate, heirs, administrators, and assigns, but is silent as to subrogees, it does not bind Kemper. Again, however, the crucial point is that a subrogation claim is not an independent claim. Mincin waived his right to sue when he signed the agreement. Therefore, no basis for a subrogation claim exists. *See Porter*, 895 P.2d at 1148 ("The insurer's right of subrogation is derived solely from the rights of its insured and is limited to those rights."). Thus, Mincin's release waived any subrogation right Kemper might have otherwise possessed. The exculpatory clause is unambiguous on this point.

Nor is there any ambiguity as to the type of claim that is barred by the agreement. The agreement covers "any and all claims I might state . . . including those claims based on negligence or breach of warranty." The agreement bars Mincin from bringing suit for any and all claims, then makes clear that breach of warranty and negligence claims are contained within that prohibition. There is nothing ambiguous about this portion of the agreement. [3]

Plaintiffs also invoke the doctrine of ejusdem generis. Under this principle, "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." Noyes Supervision, Inc. v. Canadian Indem. Co., 487 F. Supp. 433, 437 (D. Colo. 1980) (emphasis added). In this case, however, the general language ("any and all claims I might state") precedes the specific language. Thus, the doctrine of ejusdem generis is inapposite. Lyman v. Town of Bow Mar, 533 P.2d 1129, 1133 (Colo. 1975) (rejecting the application of ejusdem generis where the general words at issue preceded the enumeration of specific examples). Moreover, the term "include" is a term of "extension or enlargement," rather than limitation. Id. Thus, in this

---

[3] The agreement in Rowan contained a similar proscription against bringing suit. However, it also contained specific language that arguably limited its application to the risks inherent in skiing. The language here creates no such ambiguity.

case, as in Lyman, the general language controls and the specific language merely provides examples. See id.

In summary, the public interest in mountain biking is minimal, and the provision of trails and bicycles does not involve a duty to the public. The service provided is not a public necessity, and nothing indicates that the agreement was entered into unfairly. The agreement is clear and unambiguous. Considering these factors, we conclude that the exculpatory agreement is enforceable as a matter of law. The district court was therefore correct in granting summary judgment to defendants.

D.     California Law

Kemper argues that the district court erred in not applying California law to its subrogation claim. We need not address the choice-of-law question, however, because we hold that the agreement is also enforceable under California law.

The district court found that because Kemper's rights are derivative of Mincin's rights, granting summary judgment against Mincin necessarily entailed the granting of summary judgment against Kemper. Kemper asserts that this is error because, under California law, "settlement between the employee and the third party has no impact on the carrier's independent claim." Bailey v. Reliance Ins. Co., 94 Cal. Rptr. 2d 149, 153 (Cal. Ct. App. 2000). This rule stems from section 3859 of the California Labor Code, which states: "No release or

settlement of any claim . . . as to either the employee or the employer is valid without the written consent of both." CAL. LAB. CODE § 3859(a).

It is plain, however, that this language ("release or settlement of any claim") applies to settlements and releases obtained after an accident. In other words, an employer or an insurer that has paid an employee worker's compensation has a subrogation right, based upon the employee's right, to recover the amount paid; in such circumstances the employee may not settle a claim at the expense of the employer or the insurer. Bd. of Admin. v. Glover, 34 Cal. 3d 906, 913 (1983). Section 3859 is inapplicable in a situation such as the instant one, where the release was signed prior to the accident and before worker's compensation was paid, because no subrogation right ever arose. The California Labor Code therefore does not grant Kemper subrogation rights independent of the rights asserted by Mincin. Rather, a subrogation right has the same character under California law as it has under Colorado law:

> The nature of subrogation and its prohibition against double recovery make it abundantly clear that subrogation involves succession to the rights of others. Rights under subrogation are derivative rights, and succession to another's rights, like water, cannot rise higher than its source. . . . In their own right [subrogees] possess no claims of their own against the tortfeasor, for he has committed no wrong against them.

Glover, 34 Cal. 3d at 915 (internal quotation marks and citation omitted). Accordingly, the exculpatory clause bars Kemper's subrogation claim, even under

California law.  We find no error on the part of the district court.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.