**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80257**
**(303) 844-3157**

**Patrick J. Fisher, Jr.**                                                    **Jane B. Howell**
**Clerk**                                                              **Chief Deputy Clerk**

April 9, 2001

**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   00-3000, *Commerce Bank v. Chrysler Realty Corp., et al.*
         __ F.3d __, 2001 WL 280479
         Filed on March 22, 2001

On page two, the first sentence of the opinion is corrected to read as
follows:

Plaintiff-appellee Commerce Bank, N.A. ("Commerce") brought this
action seeking actual and punitive damages as well as an accounting
for sums wrongfully paid to defendant Chrysler Realty Corporation
("Chrysler Realty") by co-defendant DaimlerChrysler Corporation
("Chrysler Corporation").

A copy of the corrected opinion is attached.

Sincerely,
Patrick Fisher, Clerk of Court

By:
Keith Nelson
Deputy Clerk

encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 22 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

COMMERCE BANK, N.A.,

      Plaintiff-Appellee,

v.

CHRYSLER REALTY
CORPORATION;
DAIMLERCHRYSLER
CORPORATION,

      Defendants-Appellants.

No. 00-3000

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 99-CV-2017)**

---

Submitted on the briefs:

James P. O'Hara and Andrew M. DeMarea of Shughart Thomson & Kilroy, P.C.,
Overland Park, Kansas, and William E. Quirk of Shughart, Thomson & Kilroy,
P.C., Kansas City, Missouri, for Plaintiff-Appellee.

James H. Geary and Janice M. Powell of Howard & Howard Attorneys, P.C.,
Peoria, Illinois, for Defendants-Appellants.

---

Before **TACHA**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

Plaintiff-appellee Commerce Bank, N.A. ("Commerce") brought this action seeking actual and punitive damages as well as an accounting for sums wrongfully paid to defendant Chrysler Realty Corporation ("Chrysler Realty") by co-defendant DaimlerChrysler Corporation ("Chrysler Corporation").[1] Defendants appeal the district court's order granting summary judgment in favor of Commerce on Commerce's claim for actual damages. Chrysler Realty additionally appeals the district court's order awarding Commerce $20,000 in punitive damages. We reverse the order of summary judgment, vacate the award of punitive damages and remand.

## I

Most of the facts in this case were stipulated by the parties. On September 5, 1991, Chrysler Corporation entered into a sales and service agreement ("the Dealer Agreement") with one of its retail dealers, Bierwirth Chrysler Plymouth, Inc. ("Bierwirth"). Under the Dealer Agreement, Bierwirth could earn factory receivables, which include payment for sales promotion incentives, warranty work and returned parts, from Chrysler Corporation. The Dealer Agreement also

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case therefore is ordered submitted without oral argument.

provided that Chrysler Corporation could offset any amount Bierwirth owed to Chrysler Corporation or its affiliates against any amount due from Chrysler Corporation or its affiliates to Bierwirth.

On October 10, 1995, Chrysler Realty, an affiliate of Chrysler Corporation, entered into a Dealer Lease Agreement, as landlord, with Bierwirth as tenant. As part of the lease—and to secure its payment obligations under the lease's terms—Bierwirth assigned to Chrysler Realty any amounts due to Bierwirth from Chrysler Corporation or its subsidiaries. The assignment stated that "[Bierwirth] agrees that this right of assignment shall constitute a present security interest in and to such accounts benefitting [Chrysler Realty] and the within agreements of [Bierwirth] shall be a Security Agreement within the meaning of the Uniform Commercial Code as applicable in the state where the premises are located." (I Appellants' App. C at 3.) Notably, Chrysler Realty did not file a financing statement to reflect the assignment.

As part of a December 8, 1995 transaction in which Commerce supplied inventory floor plan financing to Bierwirth, Bierwirth granted Commerce a security interest in its inventory, all accounts receivable, contract rights and general intangibles then existing or thereafter owing to Bierwirth. Bierwirth executed and delivered to Commerce a security agreement. Commerce perfected its security interest by filing the security agreement with the Kansas Secretary of

State on December 22, 1995.  On February 4, 1998, Bierwirth executed and delivered to Commerce a second security agreement containing similar terms. Commerce also filed this security agreement with the Kansas Secretary of State on February 5, 1998, thereby perfecting its security interest.

On January 14, 1998, Chrysler Realty sent Chrysler Corporation a written notice of Bierwirth's assignment of factory receivables.  In this letter, Chrysler Realty stated that Bierwirth's rent was past due in the amount of $34,165.84 and requested that factory receivables be paid to Chrysler Realty until further notice. Bierwirth later sold its assets, and Chrysler Realty paid a contractor for repairs at the dealership premises.

The amount in controversy is $218,000, which is the sum of the values of four checks that Chrysler Realty received from Chrysler Corporation after the January 14, 1998 notice.  The dates and amounts of these payments are as follows:

| Date | Amount |
| --- | --- |
| February 24, 1998 | $   45,000 |
| March 24, 1998 | $   50,000 |
| April 24, 1998 | $  110,000 |
| May 15, 1998 | $   13,000 |
| | |
| TOTAL: | $  218,000 |

On May 6, 1998, Thomas J. Noack, Deputy General Counsel of Commerce, gave actual notice to Chrysler Corporation of Commerce's perfected security

-4-

interest in the factory receivables owed by Chrysler Corporation to Bierwirth. Thus, three of the above-identified checks were sent to Chrysler Realty before Chrysler Corporation was given actual notice of Commerce's security interest. The remaining May 15, 1998 check was sent to Chrysler Realty after actual notice had been given.

Commerce filed this action on January 15, 1999, claiming that Chrysler Corporation and Chrysler Realty had converted the $218,000 paid to Chrysler Realty. In addition to a money judgment for the $218,000, Commerce requested punitive damages against the defendants.

Evidence was presented that Chrysler Corporation paid Chrysler Realty $2000 more than Chrysler Realty was entitled to claim from Bierwirth. Although Commerce filed suit on January 15, 1999, Chrysler Realty did not notify Chrysler Corporation, Bierwirth or Commerce of the surplus. The overpayment was not disclosed until the deposition of Thomas H. Noles, Chrysler Realty's Eastern Area Manager, on May 17, 1999, five months after suit was filed. The district court found that Chrysler Realty acted wantonly in retaining the $2000 surplus and that Commerce was entitled to a punitive damage award equal to ten times the amount withheld.

## II

### A

This Court reviews de novo the district court's summary judgment order. L&M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A federal court sitting in diversity applies the substantive law . . . of the forum state." Signature Dev. Cos., Inc. v. Royal Ins. Co. of Am., 230 F.3d 1215, 1218 (10th Cir. 2000). We review the district court's interpretation of Kansas state law de novo. Beck v. N. Natural Gas Co., 170 F.3d 1018, 1023 (10th Cir. 1999).

### B

Defendants argue the district court's judgment in favor of Commerce worked to improperly relieve Commerce from the setoff provision of the Dealer Agreement in contravention of Kan. Stat. Ann. § 84-9-318(1)(a). That statute reads:

> (1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section 84-9-206 the rights of an assignee are subject to

> (a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom[.]

Chrysler Corporation, which is obligated to pay the dealer receivables to Bierwirth, is the "account debtor" within the meaning of this statute. Bierwirth, having assigned its rights to these receivables to Commerce, is the "assignor" and Commerce is the "assignee." Defendants argue that under § 84-9-318(1)(a) Commerce's interest in the funds paid to Chrysler Realty is subject to a "claim or defense." Their asserted defense is the provision of the Dealer Agreement that allows Chrysler Corporation to offset any amount Bierwirth owes to Chrysler Corporation or its affiliates against any amount due from Chrysler Corporation or its affiliates to Bierwirth. Commerce responds that under the statute, its rights are subject only to the claims and defenses of Chrysler Corporation as account debtor, not to any setoff based upon Chrysler Realty's claim against Bierwirth.

We have located no Kansas case precisely on point. [2] Because the Kansas Supreme Court has not addressed the issue involved, we must predict how it would decide the question. Blackhawk-Cent. City Sanitation Dist. v. Am. Guarantee & Liab. Ins. Co., 214 F.3d 1183, 1188 (10th Cir. 2000). In making this determination we may look to "other state court decisions, federal decisions, and

---

[2] As will be discussed, at least one Kansas Supreme Court case indirectly favors the position taken by defendants.

-7-

the general trend and weight of authority." Farmers Alliance Mut. Ins. Co. v. Salazar , 77 F.3d 1291, 1295 (10th Cir. 1996).

The district court relied on cases from other jurisdictions; however, those cases are distinguishable from the present one and are unlikely to be followed by the Kansas courts. In light of the general trend and weight of authority, we conclude Kansas courts addressing the § 84-9-318 issue would follow the principle of nemo dat qui non habet —no one may transfer more than he owns—and rule for defendants.

1. Bank Leumi

The district court found persuasive the case of Bank Leumi Trust Co. of N.Y. v. Collins Sale Serv., Inc. , 393 N.E.2d 468 (N.Y. 1979). Although the facts in Bank Leumi bear some superficial resemblance to those in this case, the district court failed to draw a crucial factual distinction.

Bank Leumi Trust Company loaned money to Precision Graphics and secured its loan by taking a security interest in Precision's accounts receivable. Sesco Designs owed Precision $8000 for goods purchased from Precision. As assignee of the funds due from Sesco, Bank Leumi sought to satisfy its claim by attaching the $8000 owed to Precision.

Precision also owed moneys arising from commission sales to Collins Sales Service, a corporation that had the same principal officer and shareholder as

-8-

Sesco. Precision, Sesco and Collins reached a separate agreement allowing Precision to offset any moneys owed to it by Sesco against its debt to Collins. Collins and Sesco argued that under section 9-318(1)(a) of the Uniform Commercial Code—which is identical to Kan. Stat. Ann. § 84-9-318(1)(a)—Bank Leumi's interest was subject to this setoff, and Collins therefore had first priority to the money Sesco owed Precision. The New York Court of Appeals disagreed concluding:

> It is abundantly clear that only Sesco is an account debtor of Precision, the assignor, Collins being an account creditor by virtue of the money owed it by Precision. Thus, in order to invoke the protection accorded by the statutory section, it was incumbent upon Sesco to come forth with evidentiary facts that it had a claim or defense against Precision arising from their contract for the sale of goods which would negate its obligation to pay Precision. This, defendant Sesco has failed to do.
>
> The reason espoused by Sesco for refusing payment for the goods it received from Precision is not a claim or defense arising from their contract, but, rather, a collateral agreement in which the method of payment of Precision's obligation to Collins was established.

Bank Leumi, 393 N.E.2d at 469-70.

Defendants persuasively argue that Bank Leumi should be distinguished from this case. Unlike Bank Leumi, the offset involved here is more than just an ex post, collateral agreement concerning payment. Chrysler Corporation has a

-9-

valid defense [3] against Bierwirth.  The Dealer Agreement itself provides that Chrysler Corporation may offset against its obligations to Bierwirth any amount Bierwirth owes to Chrysler Corporation     or its affiliates  .  Because Chrysler Realty is an affiliate of Chrysler Corporation, Chrysler Corporation may assert the setoff against Bierwirth and hence against Commerce.  Chrysler Corporation is not asserting a right held only by Chrysler Realty or, as in     Bank Leumi , a mere payment arrangement collateral to the original indebtedness agreement.

2.  MNC Commercial

The other case upon which the district court relied,     MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.    , 882 F.2d 615 (2d Cir. 1989), is similarly distinguishable from the current case.     MNC Commercial  involved a triangulated business arrangement similar to the one in the present case and in     Bank Leumi . MNC was the secured party/assignee of Ramco.  Ryerson, the account debtor, owed money to Ramco, the assignor.  Ramco in turn owed money to Inland Steel, Ryerson's parent company.  Ryerson stated in its order forms with Ramco that it

---

[3] We employ the term "defense" here to include the claimed setoff.  Although § 84-9-318(1)(a) refers to a "defense or claim," the Comment to § 9-318 of the Uniform Commercial Code expressly includes setoffs existing before the account debtor is notified of a subsequent assignment.     See Kan. Stat. Ann. § 84-9-318, Official UCC Comment ("An assignee has traditionally been subject to defenses or setoffs existing before an account debtor is notified of the assignment.").

-10-

reserved the right to set off any sums that Ramco owed either to Ryerson or to its parent company, Inland Steel, against Ryerson's obligations to Ramco.

MNC sued to recover certain funds owed to Ramco that Ryerson had sent directly to Inland Steel in reliance on the claimed right of offset. Ryerson cited U.C.C. § 9-318 in support of the argument that it properly relied on the setoff provision, based on Ramco's debt to Inland Steel, as a defense to MNC's action. The Second Circuit brushed aside issues of bankruptcy law and the "battle of the forms" and rejected Ryerson's argument.

> The court [in  Bank Leumi ] left open the question whether a setoff would be a defense under Section 9-318 where an intercorporate transaction between the third-party-setoff claimant (Inland) and the account debtor (Ryerson) led to the assumption by the account debtor of the third party's claim against the assignor (Ramco).    See [Bank Leumi , 393 N.E.2d at 469].  In those circumstances, of course, the account debtor would own the claim against the assignor.  No argument is made that Ryerson owns Inland's claim against Ramco. Viewed in the light most favorable to Ryerson, therefore, the    claimed contract with Ramco as to the setoff established at best "a collateral arrangement [regarding] the method of payment" that did not alter Ryerson's underlying obligation.

MNC Commercial  , 882 F.2d at 620 (emphasis added).

In other words, the Second Circuit determined that the forms in use between Ryerson and Ramco created a "collateral arrangement regarding the method of payment" and did not create any rights that Ryerson could assert

-11-

against Ramco or its assignee. [4] Specifically, the arrangement was collateral to the debtor's (Ryerson's) agreement to do business with the assignor (Ramco). Notably, the court in MNC Commercial viewed the issue before it as whether a subsequently arising setoff could take priority over a perfected security interest. 882 F.2d at 619.

Unlike Bank Leumi and MNC Commercial, this case involves an offset provision in the original agreement between Chrysler Corporation and Bierwirth, the agreement that made Chrysler Corporation the debtor. The offset provisions in Bank Leumi and MNC Commercial arose subsequent to the original agreements and were accordingly deemed to be mere collateral payment agreements. Because the offset provision was integral to the original indebtedness agreement at issue in this case, the right is a contractual one that constitutes a defense to a claim of non-payment asserted against the account debtor. The terms of the agreement provide no right to Bierwirth to insist that Chrysler Corporation pay amounts directly to it so long as Bierwirth still owed money to Chrysler Realty. Simply put, Chrysler Corporation had the contractual right to discharge its obligation to Bierwirth by paying Chrysler Realty instead of Bierwirth.

3. Kansas Law

---

[4] The Second Circuit did not reach the issue of whether a contractual right of setoff was created by the forms sent to Ramco by Ryerson.

-12-

Kansas would most likely adopt a commercially pragmatic view toward the transaction at issue and rule in favor of the account debtor's assertion of its contractual rights. Defendants cite a Kansas case applying Kan. Stat. Ann. § 84-9-318(1)(b) under circumstances similar enough to those here to suggest that a Kansas court would rule for defendants in this case. Bank of Kan. v. Hutchinson Health Servs., Inc., 785 P.2d 1349 (Kan. 1990).

In Bank of Kansas, the account debtor was the Kansas Department of Social and Rehabilitation Services ("SRS"), a state agency. SRS owed money to assignor Hutchinson Health Services ("Hutchinson"). Hutchinson in turn owed money to the Kansas Department of Human Resources ("DHR"). The Bank of Kansas, Hutchinson's assignee, made loans to Hutchinson secured on Hutchinson's accounts receivable. Pursuant to its security interest, the Bank sought to intercept payment due to Hutchinson from SRS. DHR objected, arguing that it had priority to the payment as an offset against funds Hutchinson owed to DHR.

Although the contract between SRS and Hutchinson did not expressly permit offset, the court held that DHR had a statutory right to set off funds owed to HHS by SSR. Instead of applying Kan. Stat. Ann. § 84-9-318(1)(a), the court applied § 84-9-318(1)(b), which subjects the rights of an assignee to "any other defense or claim of the account debtor against the assignor which accrues before

-13-

the account debtor receives notification of the assignment." The Kansas Supreme Court held that DHR was entitled to offset the payment due to Hutchinson from SRS and that under § 84-9-318(1)(b) the Bank of Kansas could claim priority to funds advanced after DHR was notified of its security interest. Thus, the government's offset right took priority over the Bank's security interest, even though the government's interest was not secured by a U.C.C. filing.

Commerce argues that Bank of Kansas should be distinguished from the case at bar because it involved government parties rather than corporate subsidiaries. The salient point, however, is that the offset in Bank of Kansas trumped a perfected security interest under § 84-9-318. As the Kansas commentary to § 84-9-318 notes, "[t]he rights of the Article 9 assignee are . . . much less than those of a holder in due course of a negotiable instrument." Kan. Stat. Ann. § 84-9-318, Kan. Comment to Subsection (1).

A case of more general interest is H. Freeman & Son v. Henry's, Inc., 717 P.2d 1049 (Kan. 1986). There the Kansas Supreme Court refused to compel an account debtor that had relied on an offsetting credit it had with a bankrupt merchant to repay the bankrupt's assignee. Id. at 1051. The credit with the bankrupt assignor was sufficient to cover the debt allegedly accrued with the assignee. H. Freeman suggests that offsets will be honored when failure to do so would work an injustice: it held that absent notice of the bankruptcy to the

-14-

account debtor, the assignee had acquired no greater right to the money than its bankrupt assignor. See id.

    a. Nemo Dat Qui Non Habet

The Kansas Supreme Court's holding in H. Freeman that an assignee can acquire rights no greater than those held by the assignor is consistent with the basic principle of commercial law encapsulated in the Latin phrase nemo dat qui non habet.[5] This principle can be found in several provisions of the Kansas U.C.C., including § 84-9-318. See, e.g., Kan. Stat. Ann. §§ 84-3-305 (defenses to obligations on instruments), 84-7-504(1) (transfer of documents of title).

The basic concept behind nemo dat is that a transferee's rights are no better than those held by his transferor. Applying the principle of nemo dat as expressed in § 84-9-318 and elsewhere in the Kansas U.C.C., Commerce, as Bierwirth's assignee, took its right to receive the funds subject to the right of Chrysler Corporation, the account debtor, to pay them to Chrysler Realty. The fact that Commerce had a perfected security interest, and Chrysler Realty did not, makes no difference because Commerce's secured status comes into play only after it is shown that Bierwirth was entitled to payment of the funds.

Although it is not a U.C.C. case, OXY USA, Inc. v. Colorado Interstate Gas Co., 883 P.2d 1216 (Kan. Ct. App. 1994), is instructive. In OXY the Kansas

---

[5] "He who hath not cannot give." Black's Law Dictionary 1037 (6th ed. 1990).

-15-

Court of Appeals applied nemo dat, "the time-honored rule of law" that the "assignee 'stands in the shoes of the assignor,'" to reject an attempt by an assignee to obtain a greater interest than its assignor. Id. at 1223. The assignor was the Watson family, who had entered into a gas operating agreement ("GOA") with OXY USA, a gas production company. The GOA called for the Watsons to receive fifty percent of the gas produced and bear fifty percent of the operating costs of gas production. The Watsons later executed an instrument assigning all of their mineral interest for a period of ten years to assignee Colorado Interstate Gas Company ("CIG"). At issue was whether the assignment allowed CIG to take its fifty percent interest free of the costs of production. The Kansas Court of Appeals held that CIG's interest was subject to the obligation to pay OXY USA the Watsons' share of production costs:

> The law is settled that CIG could not acquire a greater right from the assignment than those possessed by its assignor. In this case, the assignor's right to receive production income was subject to a lien in favor of their share of the cost of production. The assignee can gain no greater interest. This is a fundamental rule of law, and no resort to the complexities of the Uniform Commercial Code can render it impotent in this action.

Id. at 1223 (emphasis added).

Other Kansas cases also recognize the principle of nemo dat in commercial transactions. See, e.g., H. Freeman & Son, 717 P.2d at 1051 ("[I]t is fundamental that the assignee of a contract acquires no greater rights from the

-16-

assignment than those possessed by the assignor."). This principle is a matter of hornbook contract law. <u>See</u> Restatement (Second) of Contracts § 336 Comment b (1981) ("[T]he assignment of a non-negotiable contractual right ordinarily transfers what the assignor has but only what he has.").

In creating a security interest against Bierwirth's accounts payable, Commerce took the risk that Bierwirth's entitlement to funds from an account debtor might be limited by the account debtor's defense or claim. For the foregoing reasons, judgment for Commerce should be reversed.

## C

Upon de novo review of the $20,000 punitive damage award, <u>see</u> <u>FDIC v. Hamilton</u>, 122 F.3d 854, 857 (10th Cir. 1997), we reject Chrysler Realty's position that there was insufficient evidence to support an award of punitive damages for its actions in withholding the $2000 surplus in this case. We conclude, however, that the punitive damage award should be vacated to allow the district court to consider whether Chrysler Realty's position as a prevailing party in this matter justifies a different amount of punitive damages than the $20,000 previously awarded.

## III

The grant of summary judgment in favor of Commerce Bank is

**REVERSED**  and its order awarding punitive damages is      **VACATED** .  This case

is **REMANDED**  for further proceedings not inconsistent with this opinion.