**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 29, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KF 103-CV, LLC,

      Plaintiff - Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

      Defendant - Appellee.

No. 14-1403

(D.C. No. 1:13-CV-02875-RPM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, MATHESON** and **BACHARACH**, Circuit Judges.

Developer KF 103-CV, LLC ("KF 103") appeals the district court's grant of summary judgment to its insurer, American Family Mutual Insurance Company ("American Family"). The district court ruled that American Family did not have a duty to defend KF 103 in an underlying property dispute. KF 103 argues that the district court erred in its application of Colorado law, and that American Family had a duty to defend. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse and remand.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I**

This duty-to-defend case arises from a dispute over easements near one of KF 103's residential developments. The Infinity Group owned land adjacent to the development, and working with KF 103, began improving an intersection nearby. Several neighbors came forward contending that the intersection improvements interfered with easements they held over the modified property. The Infinity Group later conveyed the relevant property to Woodmen Heights Metropolitan District ("WHMD") and the intersection improvements were completed.

WHMD and KF 103 initiated a quiet title action in the El Paso County District Court to relocate the neighbors' easements. Defendant easement-holders included, in relevant part, William Peck ("Peck"), C. Arlene Nance ("Nance") and William and Maureen Marchant (the "Marchants") (collectively, the "neighbors"). After a bench trial on the quiet title issue, the El Paso County court issued an oral ruling and a written order (together, the "Quiet Title Rulings"). In its oral ruling, the court denied plaintiffs KF 103 and WHMD relocation of the easement, and ordered the quiet title plaintiffs to restore the easement, despite a lack of any counterclaim for relief from the defendant neighbors. In its written order, the El Paso County court characterized KF 103's and WHMD's behavior as trespass and intentional damage to the neighbors' easement. The El Paso County court then invited the neighbors to file counterclaims and ordered a "hearing on the issue of

2

remedies." Aplt. App., Vol. III at 440.

The neighbors proceeded to file several counterclaims in two waves, first in 2011 and then amended counterclaims in 2012. After the neighbors filed their initial counterclaims in 2011, KF 103 tendered the claims to American Family for defense. American Family declined. KF 103 again tendered the claims to American Family after the 2012 amended counterclaims were filed, and American Family again declined. In the El Paso County court's second hearing, it found KF 103 liable for trespass, conspiracy to trespass, and negligence. KF 103 then asked American Family to reimburse KF 103 for its attorney fees and defense costs based on its refusal to defend. American Family again refused.

KF 103 then initiated this lawsuit against American Family in Colorado state court, alleging claims for breach of contract and bad faith based on American Family's refusal to defend KF 103 in the easement litigation. American Family removed the case to federal court, where the parties were instructed to file cross-motions for summary judgment on the issue of American Family's duty to defend. The district court ruled that American Family had no duty to defend KF 103 because the neighbors' counterclaims did not fall within KF 103's insurance coverage, and it granted summary judgment to American Family.

## II

### *Standard of review*

We review a district court's grant of a motion for summary judgment de

novo. See Mincin v. Vail Holdings, Inc., 308 F.3d 1105, 1108 (10th Cir. 2002). The district court's interpretation of applicable Colorado law and KF 103's insurance policy is also reviewed de novo. Id. at 1108–09; United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 956 (10th Cir. 2011) (internal citation omitted).

*Colorado's Complaint Rule*

The parties agree that the substantive law of Colorado law controls in this diversity action. See Leprino Foods Co. v. Factory Mut. Ins. Co., 453 F.3d 1281, 1287 (10th Cir. 2006). Under Colorado law, the duty of an insurer who has refused to defend its insured is determined "solely on the allegations contained in the complaint" against the insured, as read against the coverage of the policy. Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., 90 P.3d 814, 827 (Colo. 2004) (en banc). The command to look only at the face of the complaint is often called "the complaint rule." Cyprus Amax Minerals Co. v. Lexington Ins. Co., 74 P.3d 294, 299 (Colo. 2003) (en banc).

The district court considered the Quiet Title Rulings as an alternative basis to hold that the claims against KF 103 resulted from expected or intended damage, and therefore fell outside the policy's coverage. American Family argues that the district court did not err in looking beyond the complaint to those rulings. KF 103 argues that the district court erred because the complaint rule may only be relaxed when doing so would support, rather than refute, the duty to

4

defend. Colorado law does not support either argument.

Neither the Colorado Supreme Court nor the Colorado Court of Appeals[1] have recognized any exception to complaint rule. See TCD v. Am. Family Mut. Ins. Co., 296 P.3d 255, 259 (Colo. App. 2012). Colorado courts have adhered closely to the rule, and have articulated clear policy reasons for doing so. One of these reasons is to protect an insured party's reasonable expectation that "[b]y purchasing insurance, . . . he will not be required to furnish the cost of defending actions that facially fall within the terms of his policy." Cotter, 90 P.3d at 828. The Colorado Supreme Court intended to create an overall incentive for insurers to defend, rather than to refuse "in the hope that [the underlying] litigation will reveal that no duty to defend exists." Id. The complaint rule places the burden on the insurer, rather than the insured, to accommodate the uncertainty of what the underlying litigation might reveal regarding a duty to defend. Hecla Mining Co. v. New Hampshire Ins. Co, 811 P.2d 1083, 1090 n.10 (Colo. 1991) (en banc). In short, "[t]he appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights." Id. at 1089. If the facts at trial later prove that the

---

[1] We look to the Colorado Supreme Court as the final arbiter of Colorado law. See West v. Am. Tel. & Tel. Co., 311 U.S. 223, 236 (1940). It is our duty, however, to "ascertain from all the available data what the state law is and apply it," including rulings from intermediate appellate courts, unless we are convinced that the Colorado Supreme Court would decide otherwise. Id. at 237.

5

events were outside the policy coverage, then the insurer's remedy is to seek reimbursement.  Id.

American Family points to two exceptions to the complaint rule which this court has predicted the Colorado Supreme Court would recognize.  See Pompa v. Am. Family Mut. Ins. Co., 520 F.3d 1139, 1147–49 (10th Cir. 2008) (considering the insured party's prior criminal conviction for negligent homicide to decide if the insurer had a duty to defend a wrongful death action); Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co., 593 F.3d 1188, 1190 (10th Cir. 2010) (considering a set of related complaints as one complaint for purposes of determining to a duty to defend).  We note first that the Colorado Supreme Court has not adopted either of these exceptions.  See United Fire & Cas. Co., 633 F.3d at 961.  Further, the case before us falls outside of those two exceptions, and there is no indication that the Colorado Supreme Court would create an exception to the complaint rule here.  Therefore, the district court erred in its consideration of the Quiet Title Rulings, and we will limit our review to KF 103's insurance policy and the neighbors' counterclaims.

*Occurrence*

At all times relevant to this case, KF 103 held a general liability insurance policy with American Family.  The policy extended coverage for damages that KF 103 "becomes legally obligated to pay" because of "property damage" resulting from an "occurrence."  Aplt. App., Vol. I at 69.  Under the policy, an

6

"occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 78. The policy does not further define "accident," but it does exclude damage "expected or intended from the standpoint of the insured." Id. at 69.

An insurer has a duty to defend whenever the underlying "complaint against [the] insured alleges any facts that might fall within the coverage of the policy." Thompson v. Maryland Cas. Co., 84 P.3d 496, 502 (Colo. 2004) (en banc) (internal quotation marks omitted). It is "the factual allegations in the complaint, and not the legal claims, that determine an insurer's duty." Gerrity Co. v. CIGNA Prop. & Cas. Ins. Co., 850 P.2d 606, 607 (Colo. App. 1993). If any of the allegations "state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." Hecla, 811 P.2d at 1089. "An insurer seeking to avoid its duty," therefore faces a "heavy burden of proving that the underlying claim cannot fall within the policy coverage," and must "establish that there is no factual or legal basis on which the insurer might eventually be held liable . . . ." Compass Ins. Co. v. City of Littleton, 984 P.2d 606, 614 (Colo. 1999) (en banc); Cotter, 90 P.3d at 829. If some of the allegations in the complaint may fall within the policy coverage while other allegations do not, the insurer must defend against the entire complaint because there may be some basis on which the insurer is ultimately

7

liable.  See Cotter, 90 P.3d at 829–30.

American Family therefore had a duty to defend KF 103 against any neighbor who pled facts that "potentially or arguably" alleged an "occurrence."  If any allegation can be read as an occurrence, then American Family bears a heavy burden to establish that the neighbors' counterclaims allege only "expected or intended" damages and are therefore excluded from the policy.  See Hecla, 811 P.2d at 1089–90.  "Expected or intended" damages are only those damages that the insured either intended or "knew would flow directly and immediately from its intentional act."  Id. at 1088.  "It is not enough that an insured was warned that damages might ensue from its actions, or that, once warned an insured decided to take a calculated risk and proceed as before."  Id. (quoting City of Johnstown v. Bankers Standard Ins. Co., 877 F.2d 1146 (2d Cir. 1989).  Thus, a volitional act which leads to foreseeable but unintended damages will not always fall within the "expected or intended" exclusion.

KF 103 argues that four of the neighbors' counterclaims alleged an occurrence: (1) Peck's 2011 trespass counterclaim, (2) Nance's 2012 trespass counterclaim, (3) the Marchants' and Nance's 2012 negligent misrepresentation counterclaim, and (4) the Marchants' and Nance's 2011 and 2012 negligence counterclaims.  We conclude that each of these counterclaims, construed in accordance with Colorado law, can be read to allege an occurrence.

*1. Peck's 2011 trespass counterclaim*

8

Peck's 2011 trespass counterclaim includes the following allegations:

> 17. . . . WHMD, and KF-103 . . . unilaterally altered the historic roadway and topography of the land within the [easement] without permission of the [neighbors] as the dominant estate owners, and without first obtaining judicial determination granting permission to alter the [easement] and as such trespassed on the easement and the easement rights of the . . . dominant estate owners.

Aplt. App., Vol. III at 447. Although trespass is an intentional tort under Colorado law, it only requires "the intent to do the act that itself constitutes, or inevitably causes, the intrusion." Burt v. Beautiful Savior Lutheran Church, 809 P.2d 1064, 1067 (Colo. App. 1990). Intent to violate property rights is not required. Id. Thus, a trespasser whose volitional acts result in unintended or unanticipated damage to the property of another is guilty of a trespass, but may not have "expected or intended" the damage for purposes of its insurance policy. See Miller v. Carnation Co., 516 P.2d 661, 664 (Colo. App. 1973) (explaining that one is liable for trespass "irrespective of whether he thereby causes harm to any legally protected interest of the other," and must only set in motion the events which caused the intrusion). The district court failed to make this distinction, and was therefore incorrect that the intentional tort of trespass necessarily bars a duty to defend.

In this case, Peck's 2011 trespass counterclaim alleges only the volitional act that resulted in the trespass. Thus, it is possible that KF 103 could be liable for trespass because it intended the act of altering the roadway, but still be covered by the policy because it did not intend harm to the neighbors' easement

9

rights or know that damage to the easement would flow directly and immediately from altering the roadway. The background section of the complaint mentions KF 103's quiet title action to relocate the easement, but it does not indicate that KF 103 would have known of or intended the damage to the easement at the time the alleged trespass occurred. Peck's 2011 trespass counterclaim is therefore "potentially or arguably" an occurrence, and American Family has not met its heavy burden to establish a complete lack of basis for coverage. See Hecla, 811 P.2d at 1089.

*2. Nance's 2012 trespass counterclaim*

Nance's 2012 trespass counterclaim alleges that:

109. . . . [O]ne or more of the [quiet title] Plaintiffs and/or Third Party Defendants and/or their agents entered onto . . . Nance's property and regarded a portion of . . . Nance's property, removing large quantities of soil.

110. In the course of regarding . . . Nance's property, [quiet title] Plaintiffs and/or Third Party Defendants constructed a road across the northern boundary of . . . Nance's property.

. . . .

112. By entering onto . . . Nance's property without authorization, [quiet title] Plaintiffs and/or Third Party Defendants have committed a trespass.

Aplt. App., Vol. III at 548. Like Peck's 2011 trespass counterclaim, this counterclaim alleges volitional conduct, i.e. soil removal and road construction, but does not allege that KF 103 intended or knew of any damage to Nance's property rights. These allegations are also made generally against several

10

entities, so they do not make clear the level of KF 103's culpability. Similar to Peck's 2011 trespass counterclaim, American Family has not met its heavy burden to establish that these allegations fall beyond the policy's definition of "occurrence."

*3. The Marchants' and Nance's 2012 negligent misrepresentation counterclaim*

The allegations supporting the negligent misrepresentation counterclaim state in relevant part:

> 97. . . . KF 103 and/or their agents and employees deliberately or recklessly represented to [the neighbors] that the barricading of the easement was only temporary.
>
> 98. [KF 103] made this false representation with the intent or knowledge that [the neighbors] would act or decide not to act in reliance on the information.
>
> . . . .
>
> 102. KF 103 falsely represented [to the neighbors] that they (KF 103) owned all of the real property under [the improved roadway].
>
> 103. KF 103 made this false representation with the intent or knowledge that the City and [neighbors] would act or decide not to act in reliance on the information supplied by KF 103.

Aplt. App., Vol. III at 547. These neighbors also alleged in the background facts of their complaint that KF 103 "deliberately or recklessly failed to disclose . . . that the interruption of [the] Easements was intended to be permanent with the result that [the neighbors] would not have use of their easements in the future." Aplt. App., Vol. III at 538–39. The district court read this claim to allege only intentional misrepresentations. However, reckless failure to disclose is pled as an

11

alternative to deliberate failure to disclose. Recklessness is not necessarily conduct causing damage that is "expected or intended" from the standpoint of the insured. The complaint also did not allege that KF 103 had any knowledge that its representations to the neighbors were false, that KF 103 knew that its development partners intended for the interruption to be permanent, or that it was KF 103's intent for the interruption to be permanent. These allegations therefore leave "some doubt" that unintentional misrepresentation underlies the claim. Because these damages were arguably "an accident," they fit the definition of an occurrence under the policy and give rise to a duty to defend. Even if this claim is read to allege only intentional conduct, it is included in the same complaint as the Marchants' and Nance's 2012 negligence claim, which, as explained below, alleges an occurrence. Under Cotter, American Family therefore had a duty to defend the entire complaint, including this claim. See Cotter, 90 P.3d at 829–30.

*4. The Marchants' and Nance's 2011 and 2012 negligence counterclaims*

KF 103 also argues that American Family had a duty to defend the Marchants' and Nance's 2011 and 2012 negligence counterclaims. The Marchants' and Nance's 2011 negligence counterclaim contained, in part, the following factual allegations:

> 19. Prior to commencing development of Cumbre Vista, KF-103 was aware of the location and scope of [the neighbors'] easement as admitted in Plaintiffs complaint.
>
> . . . .
>
> 24. KF-103 knew, or in the exercise of due care, should have known that the design mandated by KF-103 would result in the destruction

12

of [the neighbors'] easement and specifically in the lowering of Sorpresa Lane to such an extent that it no longer provides reasonable access to counter claimants' properties.

25. The completion of this work was done recklessly and without regard to [the neighbors'] rights in and to the easement.

26. The design and building of subdivision by KF-103 and/or its agents constitutes negligence in that it ignores the [neighbors'] rights in and to the easements.

27. In addition the bringing of this lawsuit . . . against Defendants with out satisfying the legal requirements as set forth and in Plaintiffs' complaint constitutes negligence by KF-103 . . . .

Aplt. App., Vol. III at 456–57.

The gist of these allegations is that KF 103 knew, or should have known, that its development project would interfere with the neighbors' easements. The claim therefore encompasses both intentional and unintentional damage to the easement rights. Thus, there is some doubt as to whether the damage to the easement rights was "an accident," rather than "expected or intended," and so arguably meets the definition of an occurrence.

The Marchants' and Nance's amended negligence counterclaim in 2012 reinforces an interpretation that negligent, rather than intentional conduct, was at issue. It reiterated factual allegations that KF 103 should have known that the plans for street improvement would destroy access to the neighbors' easements, and added additional facts related to the elements of negligence:

70. [KF 103] had a recognized legal duty to conform to a certain standard of conduct to protect [the neighbors] against unreasonable risks.

13

71. [KF 103] breached their duty . . . (a) by failing to contact [the neighbors] and obtain . . . approval to relocate the Easements and (b) by failing to obtain a Declaratory Order from the Court approving any relocation of the Easements before altering and destroying the Easements.

. . . .

76. KF-103 . . . required that the Subdivision be designed so as to insure that the highest possible number of buildable lots were planned and developed.

77. [KF 103] are professional in the practice of land development and as such have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence.

. . . .

83. [T]he bringing of this lawsuit by KF-103 against [the neighbors] without first satisfying the legal requirements as set forth in Plaintiffs' complaint constitutes negligence by KF-103 . . . .

Aplt. App., Vol. III at 544–46.

American Family points out that these allegations were interspersed with allegations of intentional conduct. For example, some paragraphs of this complaint alleged that an employee of KF 103 intentionally blocked easements and communicated a disregard for the neighbors' easement rights when they spoke to him. The complaint also alleges willful and wanton conduct on the part of KF 103. However, these allegations of "expected or intended" damage to the easements do not negate the remainder of allegations which can be construed as alleging accidental damage to the claimed easement rights. The Marchants' and Nance's 2011 and 2012 negligence counterclaims therefore alleged occurrences

14

for purposes of the duty to defend, and did not allege only expected or intended damages.

*Property Damage*

In addition to alleging an occurrence, the neighbors' counterclaims must also allege facts which could constitute property damage within the meaning of KF 103's policy. The policy defines "property damage" as "[p]hysical [i]njury to tangible property, including all resulting loss of use of that property;" and "[l]oss of use of tangible property that is not physically injured." Aplt. App., Vol. I at 79. We conclude that the damages alleged by the neighbors arguably fall within the policy language, and American Family therefore had a duty to defend KF 103 against each of the four counterclaims at issue.

As with "occurrence," "property damage" must be construed broadly in favor of a duty to defend. See Cyprus Amax Minerals Co., 74 P.3d at 302–04 (holding that "property damage" included expenses incurred to repair geological problems at a mine purchased from the insured). Easements are generally not considered tangible property under Colorado law. Lamar Truck Plaza, Inc. v. Sentry Ins., 757 P.2d 1143, 1144 (Colo. App. 1988) ("[T]angible property is that which is capable of being handled, touched, or physically possessed."); Wright v. Horse Creek Ranches, 697 P.2d 384, 387 (Colo. 1985) ("An easement is an interest in property which . . . confers upon the holder of the easement an enforceable right to use property of another for specific purposes.").

15

The district court was correct that the damage to the easements themselves and damage to WHMD's subservient estate cannot constitute property damage here. However, the district court did not adequately consider that the neighbors' counterclaims alleged loss of use of their own tangible property. "The loss of use of tangible property includes such property which has diminished in value or been made useless irrespective of any physical injury to the property . . . ." Hommel v. George, 802 P.2d 1156, 1158 (Colo. App. 1990).

Peck's 2011 trespass counterclaim alleged "damages for diminutive property value due to" the intersection modifications. Aplt. App., Vol. III at 448. Under Colorado law, Peck's trespass counterclaim therefore arguably falls within the policy's loss of use provision, and American Family had a duty to defend that claim.

Nance's trespass counterclaim alleged that the work on the intersection resulted in the regrading of a portion of her property, the construction of a road across the northern boundary of her property, and the removal of large quantities of her soil without her consent. Nance also alleged that the value of her property had been "greatly diminished." Aplt. App., Vol. III at 548. These are allegations of damage to her tangible property as well as loss of use, and fall within the policy's coverage.

The Marchants' and Nance's negligent misrepresentation counterclaim alleged that the neighbors' "reliance on the false information . . . directly and

16

proximately caused [the neighbors] to incur damages and losses including . . . damages for loss of safe, reasonable access" to their properties. Aplt. App. Vol. III at 547. This statement arguably alleges a loss of use of the neighbors' tangible property, and so American Family had a duty to defend these claims.

The Marchants' and Nance's 2011 negligence counterclaim alleged that they were "damaged in an amount equal to the cost of restoring the easement" and that their "property values have also been greatly diminished." Aplt. App., Vol. III at 456–57. Their 2012 negligence counterclaim states: "[Due to] the negligence of [KF 103] and the closure and destruction of the [neighbors'] Easements, these [neighbors] have been damaged by the temporary . . . loss of safe, uninhabited access" to their own properties. Aplt. App., Vol. III at 544–46. These are allegations of diminished use and value of tangible property, which arguably fall within policy coverage. American Family therefore had a duty to defend the Marchants' and Nance negligence claims.

## III

The decision of the district court is reversed and remanded. The pending motion to certify a question to the Supreme Court of Colorado is denied.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

17