**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 21, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CALVIN CHAUSSEE, II; ANNETTE
CHAUSSEE; VIDEO PRODUCTIONS,
INC.,

      Plaintiffs - Appellants,

v.

AUTO-OWNERS INSURANCE
COMPANY,

      Defendant - Appellee.

No. 25-1120
(D.C. No. 1:23-CV-02228-DDD-CYC)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BACHARACH** and **MORITZ**, Circuit Judges, and **SHELBY**,[**] District Judge

_____

This appeal concerns whether Appellee Auto-Owners Insurance Co. (AOI) had

a duty to defend Appellants Calvin Chaussee II, Annette Chaussee, and Video

Productions, Inc. (VPI) (collectively, the Chaussees) in an underlying lawsuit under

the terms of a general liability insurance policy.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.
    [**] The Honorable Robert J. Shelby, U.S. District Judge, District of Utah,
sitting by designation.

## I.    Background

### A.  The Underlying Case

In 2016 and 2018, Calvin and Annette Chaussee owned and operated an RV park—Cadillac Jack's—in Calhan, Colorado.  Cadillac Jack's ownership structure involved a snarl of other entities owned or operated by Calvin and Annette[1] in conjunction with various other members of the Chaussee family (collectively, the CJ Chaussees), including VPI.  The CJ Chaussees include the then-mayor of Calhan, a Calhan trustee, and a member of Calhan's Planning and Development Committee (the Committee).  The following graph illustrates the relevant relationships:



---

[1] The court refers to Annette and Calvin Chaussee by their first names for clarity.

At the same time, Van Sant & Co. owned a mobile home park, the only other business that rented parking spaces to RVs in or around Calhan.  In 2016, the Committee recommended, and Calhan enacted, an amendment to the city's land development code prohibiting RV parking in mobile home parks (the 2016 RV Amendment).  In response to the 2016 RV Amendment, Van Sant expended significant funds modifying its mobile home park to comply with the 2016 RV Amendment.

Van Sant publicly announced its intention to convert its mobile home park into an RV park at a Calhan town meeting attended by at least some of the CJ Chaussees. Following the announcement, Calhan enacted a new ordinance imposing development restrictions for RV parks (the 2018 RV Ordinance).  Two of the CJ Chaussees were directly involved in passing the 2018 Ordinance: the then-mayor and the Calhan trustee.  The 2018 RV Ordinance included a "grandfathering clause," which had the practical effect of imposing new development requirements on Van Sant's property but not Cadillac Jack's.  Coupled with the 2016 RV Amendment, the development restrictions imposed by the 2018 RV Ordinance effectively prevented Van Sant from operating an RV park or a mobile home park in Calhan, financially destroying the company.

In August 2021, Van Sant filed suit in the United States District Court for the District of Colorado asserting two antitrust claims against the CJ Chaussees[2] under

---

[2] The Van Sant Complaint occasionally distinguishes between the Chaussees and other named Defendants (the so-called Town Defendants) but also regularly

the Sherman Act: Conspiracy in Restraint of Trade and Conspiracy to Monopolize. In support of these claims, Van Sant alleged, among other things, the CJ Chaussees knowingly and deliberately conspired to adopt the 2016 RV Amendment and the 2018 RV Ordinance to exclude Van Sant from the Calhan long-term RV parking market. Van Sant further alleged the CJ Chaussees' conspiracy unreasonably restrained and monopolized trade and commerce in the RV parking market by excluding competition and enabling price control. Van Sant asserted damages consisting of the expenses incurred converting its mobile home park into an RV park following the 2016 RV Amendment, lost rental revenues, and lost property value. Defendants obtained dismissal of the suit by the district court, and this court affirmed.

B. AOI Declines to Defend the Chaussees

At the time Van Sant sued, the Chaussees maintained a general commercial liability insurance policy (Policy) for VPI issued by AOI. The Policy provides AOI "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [AOI] will have the right and duty to defend the insured against any 'suit' seeking those damages." *Appellant's App'x vol. I*, at 159. The Policy applies only to

---

refers to all Defendants collectively. The court interprets allegations referring to "Defendants" to apply to all named Defendants, including the Chaussees.

"property damage" caused by an "occurrence." *Id.* The Policy defines "property

damage" as:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* at 175.

The Policy defines "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions." *Id.* at 174.

The Policy does not define "accident." Further, the Policy excludes coverage for

"'property damage' expected or intended from the standpoint of the insured." *Id.* at

160.

In response to Van Sant's antitrust lawsuit, the Chaussees submitted a claim to

AOI and demanded AOI defend them. AOI denied the claim and refused to defend.

The Chaussees subsequently hired counsel to defend them in the Van Sant case.

After the Chaussees prevailed in the district court, it again submitted a claim to AOI,

"demand[ing] that AOI remit payment for $200,000 as reimbursement for the defense

fees and costs they incurred to defend themselves in the lawsuit." *Id.* at 225, 250.

AOI maintained the Van Sant Complaint did not trigger its duty to defend

because Van Sant "did not allege 'property damage' caused by an 'occurrence' . . . as

required by the Policy," and "even if the Complaint did allege 'property damage,'"

the "'expected or intended injury' exclusion for any alleged property damage"
applied. *Id.* at 249–265.

### C. The Chaussees Sue AOI

On August 1, 2023, the Chaussees filed a complaint against AOI for breach of
contract, common law bad faith insurance practices, and statutory bad faith insurance
practices. The parties filed cross-motions for summary judgment, and the district
court granted summary judgment to AOI. The district court concluded AOI did not
have a duty to defend the Chaussees because the Van Sant Complaint did not allege
property damage caused by an occurrence as required for coverage under the Policy.
Specifically, there was no "occurrence" because Van Sant's conspiracy allegations
"do not create even an arguable possibility that the case involved an 'accident,'" and
"modifying one's property in a conceivably valuable, but ultimately valueless,
manner" does not constitute "property damage" under the Policy. *Appellant's App'x
vol. II*, at 284–86. The Chaussees appeal.

### II.    Standard of Review

"We review summary judgments de novo, applying the same standards that the
district court should apply." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir.
2018) (quotation omitted). Rule 56(a) of the Federal Rules of Civil Procedure
provides the "court shall grant summary judgment if the movant shows that there is
no genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law." The Supreme Court has explained, "summary judgment should be
granted where the evidence is such that it 'would require a directed verdict for the

6

moving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (quoting *Sartor v. Ark. Gas Corp.*, 321 U.S. 620, 624 (1944)).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251–52.

### III.    Discussion

Colorado law governs this diversity action.  *See Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1192 (10th Cir. 2010).  Under Colorado law, "[t]he determination of a duty to defend . . . depends on the terms in the insurance policy, and the interpretation of those terms [is] based upon the principles of contract interpretation."  *Hecla Min. Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991).  The terms of the policy are "given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended."  *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999) (en banc) (quoting *Chacon v. Am. Fam. Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990)).  If the terms "are susceptible to more than one reasonable interpretation," the "language must be construed in favor of the insured and against the insurer who drafted the policy."  *Hecla*, 811 P.2d at 1090–91.

"[T]he duty to defend is broader than the duty to indemnify," and "in some instances, insurers will be found to have a duty to defend even though ultimately it may be determined that they have no duty to indemnify."  *Compass Ins. Co.*, 984 P.2d at 613.  Under Colorado law, the duty to defend is determined by "the complaint

7

rule:" the duty arises when the "allegations in the complaint, [] if sustained, would impose a liability covered by the policy." *AIMCO*, 593 F.3d at 1192–93 (quoting *Hecla*, 811 P.2d at 1089). The insurer must defend the insured "unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy." *Hecla*, 811 P.2d at 1090 (citation omitted). The insurer establishes this by showing "there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Id.* (citation omitted). Courts determine whether an insurer has a duty to defend by "compar[ing] the allegations of the underlying complaint with the relevant provisions of the insurance policy." *AIMCO*, 593 F.3d at 1193 (citation omitted).

Applying these principles here, AOI had a duty to defend the Chaussees if the Van Sant Complaint alleged an "occurrence" caused "property damage" to the covered tangible property. An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Appellant's App'x vol. I,* at 174. Recall that the Policy does not define "accident."

Colorado courts have consistently construed "accident" in this context to mean something "unexpected and unintended." *Hecla*, 811 P.2d at 1091 (collecting cases). "'Expected or intended' damages are only those damages that the insured either intended or 'knew would flow directly and immediately from its intentional act.'" *KF 103-CV, LLC v. Am. Fam. Mut. Ins. Co.*, 630 F. App'x 826, 831 (10th Cir. 2015) (quoting *Hecla*, 811 P.2d at 1088). The term "accident" is most properly analyzed by "focus[ing] on the insured, rather than the victim of the misfortune," and "where the

8

harm is the natural result of the voluntary and intentional acts of the insured, it is not 'caused by accident'" within the meaning of a liability insurance policy. Plitt et al., 9 Couch on Insurance § 126:27 (3d ed. Dec. 2025) (Accident—Application to intentional acts); *see also Hecla*, 811 P.2d at 1088 ("In general, what make[s] injuries or damages expected or intended rather than accidental are the knowledge and intent of the insured. . . . Recovery will be barred . . . if the insurer intended the damages, or if it can be said that the damages were, in a broader sense, 'intended' by the insured because the insured knew that the damages would flow directly and immediately from its intentional act." (quoting *City of Johnstown v. Bankers Stand. Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir. 1989))).

The Van Sant Complaint does not allege an "occurrence"—a condition precedent for coverage under the Policy. The only claims asserted by Van Sant in its Complaint against the Chaussees are Conspiracy in Restraint of Trade and Conspiracy to Monopolize under Sections 1 and 2 of the Sherman Act. Both conspiracy claims require "concerted action by a plurality of actors." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1231 (10th Cir. 2017) (quotation and citation omitted); *see also Salco Corp. v. Gen. Motors Corp., Buick Motor Div.*, 517 F.2d 567, 576 (10th Cir. 1975) (explaining "[s]pecific intent to monopolize is the heart of a conspiracy charge" under Section 2 of the Sherman Act).

As the Chaussees correctly observe, "it is the factual allegations in the complaint, and not the legal claims, that determine an insurer's duty to defend." *KF 103-CV, LLC*, 630 Fed. App'x at 830 (quoting *Gerrity Co. v. CIGNA Prop. & Cas.*

*Ins. Co.*, 860 P.2d 606, 607 (Colo. App. 1993)).  However, the Chaussees fare no better under the Van Sant Complaint's factual allegations.  The Van Sant Complaint alleges Calvin and Annette, together with the other CJ Chaussees, had ownership interests in Cadillac Jack's—the only other business that offered rental RV parking in Calhan.  The CJ Chaussees comprised individuals with power to influence and enact development restrictions in Calhan, including a member of the Committee, a Calhan trustee, and the mayor.  The Complaint alleges the CJ Chaussees first conspired to prohibit Calhan mobile home parks from renting RV parking spaces, knowing that their only competition was the Van Sant mobile home park.  Then the CJ Chaussees later conspired to enact the 2018 RV Ordinance that was deliberately designed to impose onerous restrictions on Van Sant after it announced a plan to convert its mobile home park to an RV park.  The 2018 RV Ordinance included language exempting the CJ Chaussees from the same restrictions, resulting in excluding Van Sant and establishing a Cadillac Jack's monopoly on the Calhan rental RV parking market.

Thus, the Van Sant Complaint alleges the CJ Chaussees knowingly and intentionally engaged in acts specifically designed to cause the alleged harm to Van Sant.  Indeed, the Complaint does not allege *any* actions that can be construed as unintended or accidental.  Since the actions pled are not accidental, the alleged property damage cannot be construed as "caused by an occurrence" as required under the Policy.

10

The Chaussees nevertheless argue the district court erred in determining they engaged in intentional conduct because the Van Sant Complaint did not allege any specific actions taken by Calvin, Annette, or VPI to pass the 2016 RV Amendment or the 2018 RV Ordinance or that they knew the enactment would result in harm to Van Sant. This argument is unavailing.

The only claims the Van Sant Complaint asserts against the Chaussees are Conspiracy in Restraint of Trade and Conspiracy to Monopolize under the Sherman Act. Conspiracy under the Sherman Act is an illegal agreement to foreclose competition. *See Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480–82 (10th Cir. 1989); *City of Tuscaloosa v. Harcos Chems., Inc.*, 158 F.3d 548, 569 (11th Cir. 1998) ("It is settled law that a threshold requirement of every antitrust conspiracy claim, whether brought under section 1 or section 2 of the Sherman Act, is an agreement to restrain trade." (citation modified)); *see also W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010) ("To prevail on a [Sherman Act] conspiracy claim, a plaintiff must establish the existence of an agreement, sometimes also referred to as a conspiracy or concerted action. (citation modified)). "It is not the form of the combination or the particular means used but the result to be achieved that the statute condemns." *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946). "No formal agreement is necessary to constitute an unlawful conspiracy," and circumstantial evidence establishing "the conspirators had a unity of purpose or a common design and understanding . . . in an unlawful arrangement" is sufficient. *Id.* at 809–10; *see also*

11

*Torodov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1456 (11th Cir. 1991) ("[M]ost conspiracies are proved by inferences drawn from the behavior of the alleged conspirators.").

Here, the Van Sant Complaint alleged a conspiracy, the relationships and shared economic interests of the conspirators, and specific actions of co-conspirators—the other CJ Chaussees. The Complaint did not need to allege specific conduct of the Chaussees or VPI to allege a conspiracy. More importantly, the duty to defend only arises if the allegations—*if sustained*—"would impose a liability covered by the policy." *AIMCO*, 593 F.3d at 1193 (quoting *Hecla*, 811 P.2d at 1089). Because the Van Sant Complaint alleged only that the Chaussees were part of a conspiracy to exclude Van Sant from the Calhan long-term RV parking market— non-accidental conduct excluded under the Policy—AOI had no duty to defend the Chaussees.

### B. We Decline to Consider Whether the District Court Erred in Failing to Consider Facts Outside the Van Sant Complaint.

The Chaussees also argued to the district court that it should consider judicially-noticeable facts beyond the Van Sant Complaint known by AOI that suggested the Chaussees' conduct was not intentional. The district court did not reach this argument. Nevertheless, the Chaussees ask this court to decide whether a district court may consider such facts in determining a duty to defend.

The Chaussees acknowledge considering such facts requires a district court to depart from the complaint rule. They do not brief what facts they contend the district

12

court should have considered or provide any analysis concerning how the outcome below may have differed had the court considered them. "It is well-settled that arguments inadequately briefed in the opening brief are waived." *United States v. Clay*, 148 F.4th 1181, 1201 (10th Cir. 2025) (quoting *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011)); *see also* Fed. R. App. P. 28(a) (requiring an opening brief to include the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). More importantly, federal appellate courts generally "do[] not consider an issue not passed upon below." *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1186 (10th Cir. 2003) (quotation and citations omitted). Accordingly, we decline to consider the issue.

## Conclusion

Because the Van Sant Complaint alleged the Chaussees engaged only in conduct with the intent to cause the harm alleged, there was no conceivable "occurrence" under the Policy to trigger AOI's duty to defend. Accordingly, AOI had no duty to defend the Chaussees in the Van Sant litigation. Affirmed.

Entered for the Court


Robert J. Shelby
District Court Judge